THE COMMERCIAL BANK OF MANCHESTER, COMPLAINANT AND APPELLANT, *v.* HENRY S. BUCKNER.

The Circuit Court of the United States has no power to entertain an original bill brought by a creditor, who has come in and proved his debt against the bankrupt, for the purpose of annulling or vacating a discharge and certificate in bankruptcy, obtained in the District Court upon imputations of fraud, done in contemplation of bankruptcy by the bankrupt; or to give relief, either at law or in equity, in a suit brought by a creditor who had proved his debt under the commission, who had assented to the bankrupt's discharge and certificate, and who had taken a dividend out of the bankrupt's estate.

The District Court, which passed the decree in bankruptcy, can take cognizance of such a case.

Whether or not such a bill could be filed by a creditor who had not come in and proved his debt, and who was not a party to the decree in bankruptcy, is a question which the court does not now decide.

Nor has the Circuit Court the power, under its general jurisdiction over frauds, to give relief either at law or in equity, in a suit brought by a creditor who had proved his debt under the commission, had assented to the bankrupt's discharge and certificate, and had taken a dividend out of the bankrupt's estate.

A demurrer only admits facts which are well pleaded.

THIS was an appeal from the Circuit Court of the United States for the eastern district of Louisiana.

It was a bill filed by the bank upon the equity side of the Circuit Court, against Buckner, under the circumstances fully detailed in the opinion of the court.

It was argued by *Mr. Day* for the appellant, and by *Mr. Benjamin* and *Mr. Bayard* for the appellee.

*Mr. Day* filed an elaborate printed argument, consisting of more than one hundred pages. Of the several points of the case included in this argument, it is necessary to omit the discussion of the following propositions, viz:

1. Are the charges of fraud sufficient to invalidate the discharge in bankruptcy?

2. The equity side of the court has jurisdiction over the case, upon the ground of its general jurisdiction over frauds.

3. Whether the case made by the bill is of such a nature and character as to give equity jurisdiction.

4. Nor does the fact that the fraud from which relief was

sought, is fraud in obtaining a judgment in discharge in bankruptcy, at all militate or vest the chancellor of jurisdiction.

*Mr. Day* then sustained the right of the Circuit Court to interpose in this case, upon the ground that the discharge in bankruptcy should be treated as a nullity.

True, a court of equity does not presume to direct or control a court of law; but, it considers all the equities between the parties, and acts upon the person of the party seeking against good conscience to avail himself of an advantage which, under all the equitable circumstances of the case, it is against conscience for him so to do, and restrains or deprives him of such advantage. (20 Conn. R., 556; 2 St. Eq., secs. 875, 194; 1 Atk., 630; 1 Sch. and Lef., 205–'6; 2 P. Wm., 424; 2 Ves. jun., 135; 3 P. W., 395.)

And so, even at law, (notwithstanding the general rule that no court, except an appellate one, has authority or power to set aside the judgment of another court of competent jurisdiction, for error or irregularity,) where the main object, as in this case, is not to annul the judgment of another court, but simply to avoid the effect of such judgment when it is set up as a bar, by replying that it was obtained by fraud, the party has a right to show, in any court, that the judgment was obtained by fraud and imposition, and thus indirectly to treat it as a nullity. (2 La. R., 139–'40; 11 ib., 521; 25 Vt. R., 339; 2 Kernan's R., 165, and auth. cited; 3 Cranch's R., 300, 307–'8, 310–'11; 3 Foster's N. H. R., 535; 3 Sum., 604; Shedden *v.* Patrick, 28 Eng. L. and Eq. R., 56, and the numerous cases cited by counsel on page 60; 72 Eng. C. L., 513; 15 J. R., 121; 6 Pet., 729–'30; Don *v.* Lipman, 5 Clark and Finn. R., 1, 20, 21; St. Conf. L., sec. 603.)

For if such be not the law, then a party would be allowed to profit by his own fraud, " a position altogether inadmissible." (Per Thompson, C. J., in Borden *v.* Fitch, 15 J. R., 121.)

But, be this as it may on general principles, yet, according to the express provisions of the bankrupt act, it is competent for any court to treat the discharge and certificate, when interposed as a barrier to prevent a recovery on a pre-existing demand, as null and void, whenever the fraud is shown. (5 U. S. Stat., 443–'4; 8 Ired. N. C. R., 142; Mabry et al. *v.* Herndon, 8 Alab. R., 848, 864; 11 Humphrey's R., 289; 3 Dess. R., 269–'70; 3 Cranch R., 300, 307; 9 Ga. R., 9, 14, 15; 15 Alab. R., 553–'4; 2 Zab. R., 541; 25 Vt. R., 339. See also Robt. Fraud. Conv., 520; 1 Dall., 380; 1 Bin. R., 263; 3 Har. and J., 13; 6 ib., 82; 5 Bin. R., 247.)

Fraud vitiates everything into which it enters. It is like the deadly and noxious simoom of arid and desert climes. It

prostrates all before its contaminating touch, and leaves death only and destruction in its train. No act, however solemn, no agreement, however sacred, can resist its all-destroying power.

All acts into which fraud enters are nullities.

Neither a *bona fide* debt nor an actual advance of money will sustain a security infected with fraud. (Per Sandford, Chancellor, 2 Sandf. Ch. R., 631.)

In the case of Downer *v.* Rowell, (25 Vt. R., 339,) the Supreme Court of Vermont, in construing the bankrupt act, says: "The statute in effect declares, that in case the discharge and certificate were superinduced by fraud, they may be impeached on that ground, as being null and void."

And if a judgment is null and void, it is the same thing as though it had never been rendered, and is "unavailable for any purpose," (Per Thompson Ch. J., in Borden *v.* Fitch, 15 J. R., 140; 11 S. and Mar. R., 464; 11 La. R., 533; 11 Eng. Ch. R., 448–'9;) and may be collaterally disallowed and disregarded. (Slocum *v.* Wheeler, 1 Day's Con. R., 429, 449; 6 How. Miss. R., 285; 8 Sm. and Mar. R., 519.)

Such being the law, then, there can be no ground for saying that the discharge and certificate should have been annulled by a direct action, instituted for that purpose, in the bankrupt court. (2 Kernan's R., 166; 8 Alab. R., 855, 864.)

Indeed, it has been held, by high authority, that the District Court never had any jurisdiction to entertain such a proceeding. (Mabry et al. *v.* Herndon, 8 Alab. R., 855.)

But if it could be shown, or was conceded, that the bankrupt act gave such jurisdiction to that court, yet, as the act has been unconditionally repealed, with no saving clause in the repealing act, except for the purpose of finally completing and determining causes then pending, the District Court is clearly without any jurisdiction for such a purpose. (4 Seld. R., 265.) For the law is well settled, that whenever a statute from which a court derives its jurisdiction is repealed, the jurisdiction of the court is gone, even as to suits then pending, except so far as it is expressly saved by the repealing act, and that the original act conferring jurisdiction is to be regarded as though it had never existed. (Dwarris on Stat., 676; Miller's Case, 1 Wm. Blak. R., 451; 4 Yeates R., 394; 5 Cranch, 281; 11 Pick., 350; 21 Pick., 373; 1 Hill, 324; 5 Blackf. R., 195; 15 Con. R., 242; 4 Humph. R., 427; 4 Seld. R., 265, 269.)

No action of nullity, then, was or could by any possibility be necessary to entitle the complainants to recover, either at law or in equity, on their original demands.

Nor was it at all necessary to apply to the District Court

for leave to impeach the discharge and certificate. Chief Justice Ruffin, in 8 Ired. R., 142, says it is the duty of the court "to hold a discharge obtained by fraud as ineffectual and void, whenever the fraud shall appear. The remedy of the creditor is not an application to the court of bankruptcy, upon the ground of fraud newly discovered, but by replying the fraud of the bankrupt to the plea of discharge, so as thereby to avoid the bar." And the same doctrine is laid down by the Supreme Court of Alabama, in 8 Alab. R., 864.

In Sims *v.* Slocum, (3 Cranch, 300, 307,) Chief Justice Marshall says: "When the person who has committed the fraud attempts to avail himself of the act, so as to discharge himself from a previously-existing obligation, or to acquire a benefit, the judgment thus obtained is declared void as to that purpose."

And in Mabry et al. *v.* Herndon, (8 Alab. R., 856–'7,) Chief Justice Collier, also, in an elaborate opinion, said: "Thus we see, that although the statute contemplated a boon to the debtor, viz: a release from indebtedness, it exacted, on his part, perfect integrity in yielding up everything that was liable to his debts. If this was not done, but something was wilfully withheld to which the creditors were entitled, the fact of concealment is denounced as a fraud; and upon its being made known, the court was required to refuse its sanction to the bankrupt's discharge. And if the proceedings are formally consummated by a final decree, and a certificate consequent thereupon, it is competent for any court of judicature, upon the fraud being established, to treat the certificate as a nullity." (See also Mitf. Eq. Pl., 239.)

The Supreme Court of Tennessee, in the case of Gupton *v.* Connor, (11 Humph. R., 289,) well says: "If the fraud appear pending his suit against his creditors, no decree of discharge could be made. If it appear afterwards, its effect is to annul and destroy the discharge and certificate, as though they had never been obtained."

And in Cogburn & Powell *v.* Spence & Elliott, (15 Alab. R., 553–'4,) the Supreme Court of Alabama very truly remarks: "The bankrupt act does not intend, nor in any manner undertake to restrain a creditor who has a cause of action against a bankrupt, from sueing him, although the bankrupt may have obtained his final certificate of discharge. It only gives the bankrupt a complete defence against the cause of action when sued. That the whole scope of the act was to furnish the bankrupt with a complete defence to suits brought against him, is still more apparent from the fact that the certificate is not a bar, if the debt is of a fiduciary character, or if the discharge

be obtained by fraud. The act, therefore, only intends to arm the bankrupt with a perfect defence against all debts discharged by the certificate obtained in pursuance of the act. The creditor may, however, sue on his demand; otherwise, he could not dispute the *bona fides* of the certificate, and the bankrupt must rely on his certificate in bar of the suit."

Chancellor Desaussure, too, in Lowe *v.* Blake, (3 Dess., 269, 270,) in relation to an insolvent discharge, uses this strong and forcible language: "That in case there was any fraud or concealment in obtaining this discharge, this court is not bound to give effect to the discharge obtained in any other court. That it is essential to the jurisdiction of this court to detect fraud, and to prevent its having its intended effect; and even formal judgments at law cannot resist its all-searching power; and when the frauds on which they have been obtained are exposed, such judgments are decreed to be nullities. If the discharge was obtained by fraud or concealment, it was a mere nullity, like every other judgment or sentence of a court obtained by fraud or surreptitiously."

So in Card *v.* Walbridge and others, (18 Ohio, 411, 423,) which is a case directly in point, it being a bill to subject certain property to the payment of certain debts, and to have the certificate of bankruptcy declared void, as having been obtained in fraud of the law, the court, in sustaining the jurisdiction, says: "The great question in the case is one of fraud, which has to be established before the complainant can proceed one step in his cause, and comes within the original powers of a court of chancery."

"The appropriate remedy," (says Chancellor Walworth, Alcott *v.* Avery, 1 Barb. Ch. R., 347, 352,) "of the complainant in this court, where he wishes to contest the validity of the defendant's discharge subsequent to the decree, and to obtain satisfaction of the decree out of subsequently-acquired property, is to file a supplemental bill, stating the obtaining of the decree, the alleged or pretended discharge of the defendant, under the bankrupt act, subsequent to such decree, and the fraud of the defendant which renders the alleged discharge invalid; and praying that the decree may be carried into full effect against the defendant and his property, notwithstanding his pretended discharge." (See also 9 Ga. R., 9, 14.)

The counsel for the defendant thus stated the point on which the decision of the court turned:

1. The District Court has exclusive jurisdiction to impeach the decree of discharge in bankruptcy, or recall the certificate. It may adjourn any point arising in any case in bankruptcy to

the Circuit Court, but the latter has no jurisdiction of an original bill to annul or avoid the decree of the District Court, as prayed for in this suit, though the Circuit Court would, as well as a State court, have jurisdiction to inquire into the validity of the discharge if pleaded in bar and impeached for fraud, or its effect if a subsequent express promise of payment by the bankrupt were alleged.

The bankrupt proceedings are in the nature of proceedings *in rem*, and not subject to collateral inquiry in another than the court which decreed the discharge. (Bankrupt Law of 1841, secs. 4 and 6, 5 Stat., 444; Shawhan *v.* Wherrit, 7 How., 643; N. Am. Ins. Co. *v.* Graham, 5 Sandf., 197.)

Mr. Justice WAYNE delivered the opinion of the court.

The decision which we are about to give would not be satisfactory, unless it shall be preceded by a statement of the facts of the case as they are disclosed by the pleadings. We shall adopt that which was given by the counsel who argued the cause, with but little alteration or addition.

The appellants allege, in their bill, that during the years 1841 and 1842, the defendant, Henry S. Buckner, together with M. B. Hamer, who died in April, 1842, and Frederick Stanton, were partners in trade, doing commercial business in New Orleans, under the firm of Buckner, Stanton, & Co., Buckner being the resident partner there; and in Natchez under the firm of Stanton, Buckner, & Co., Stanton conducting it; and at Yazoo city under the firm of M. B. Hamer & Co., Hamer being the resident partner at that place. The three firms were distinct and separate, and kept their books and accounts accordingly. It is alleged that the three firms and the three members of them became hopelessly insolvent in the year 1841, and that they continued to transact business together until Hamer's death; that after his death the two survivors carried on the business of the three firms until their bankruptcy. On the 21st July, 1842, Stanton filed his petition in the United States District Court for the southern district of Mississippi, both individually and as a member of the three firms, was decreed a bankrupt on the 8th November, 1842, and received his certificate of discharge on the 21st February, 1843. On the 18th July, 1842, Buckner made a similar application to the District Court in New Orleans, was decreed a bankrupt on the 5th September, 1842, and received his certificate of discharge on the 5th December, 1842. It is also said that their applications for their discharges in bankruptcy were made by Buckner and Stanton in concert, with a view to future business.

It appears at the time of these applications they were indebted

to the appellants in the sum of $49,020.14, besides interest, on twelve promissory notes and on one bill of exchange, all which had become due in January, 1842. Three of them were payable on or before the 6th January, 1839; three others on the 3d April, 1839; four on or before the 3d March, 1841; and the last in the month of January, 1842, six months before Buckner filed his petition in bankruptcy. Buckner acknowledged the indebtment in his schedule filed with his petition in bankruptcy. The complainants proved a portion of their claim in the bankruptcy proceedings of Stanton. It is admitted that they received a small dividend from the assets of the firm; but they aver they did so in ignorance of the frauds upon the bankrupt law, committed by Buckner and Stanton, of which they knew nothing until the year 1853, when they discovered the frauds. And they further allege that they would not have proved their claim, nor have received a dividend, if they had known the frauds; and they assert that the certificates of discharge are null and void, by reason of the frauds.

It is then stated in the bill that the three firms had existed before 1837, in which year they suspended payment, but that they never recovered from their embarrassments, though they had resumed business. It is again alleged that their affairs were hopeless in 1841, and that executions on judgments obtained against Stanton as a member of the firm were in that year returned *nulla bona.*

That all the indebtment of the firms which made them insolvent was due prior to the 1st March, 1842, at which time the frauds began. That then, Buckner and Stanton had agreed that they would take the benefit of the bankrupt law, and, in contemplation of doing so, committed the fraud stated in the bill.

Twelve different charges of fraud are specified, all of them being payments to preferred creditors, in fraud of the general creditors—contrary to the provisions of the act of the 19th August, 1841. No charge of any other fraud is made, except a transfer of some property in New Orleans, upon the understanding that Buckner was to have the right to redeem it on payment of the debt, and that the arrangement had secured for him an ultimate profit, in fraud of creditors. They also say, that it was because of the fraud of Buckner and Stanton in concealing a knowledge of the facts from them, that they were induced to believe the discharges valid; and so they did not proceed to enforce their claims at law or in equity, but that they had found them out only within two years. How or from what source they had made the discovery they do not state distinctly, though to support the charge they file an exhibit of

notes discounted for Stanton, Buckner, & Co., by the Commercial Bank of Natchez, which were applied to their credit, and a list of protested notes of Stanton, Buckner, & Co., taken up by them in May, 1842—two months before Stanton filed his petition in bankruptcy. Two letters from Stanton to Stephen Duncan—one of them dated at Natchez, on the 14th August, 1842, and the other on the 14th September, 1842—are made exhibits; both relate to the affairs of the firm, and to particular transactions of them, which the appellants allege were frauds committed by Stanton and Buckner, in giving preferences to certain creditors, in contemplation of bankruptcy. And they further declare, that since the bankruptcy of Stanton and Buckner, the books of Stanton, Buckner, & Co., had, by some means, passed into the possession of Buckner; that if produced, the fraudulent preferences which had been made would be shown, and that they would also disclose other fraudulent preferences made by Stanton for himself and the firm of Stanton, Buckner, & Co., in the spring and summer of 1842, in contemplation of bankruptcy.

The bill is closed with a prayer that the first decree of the District Court, discharging Buckner, should be declared void and of no validity, as far as the rights of the complainants, as set forth in the bill, could be affected by it, and that Buckner should be perpetually enjoined from setting it up against their rights; and that Buckner should be adjudged to pay them the original sum due by him, with interest thereon; to which is added a prayer for general relief.

The defendant demurred to the bill, and, for causes of demurrer, says:

I. That the said complainants have not, by their said bill, made such a case as entitles this court to entertain jurisdiction of this cause under the Constitution and laws of the United States.

II. That the said complainants have not, by the said bill, made such a case as entitles this court to entertain jurisdiction, or grant relief in equity; the remedy of complainants, if any they have, being at law, and not in equity.

III. That the said complainants having, by their own showing in said bill, made proof of their claims, and received dividends thereon, in the bankruptcy proceedings which resulted in the discharge of this defendant, are not permitted by law to impeach the validity of said discharge in manner and form as sought by said bill; and having been parties and privies to the judgment of discharge in favor of this defendant, are forever precluded in law from contesting the validity and effect of

said judgment, on any such grounds as are alleged in said bill.

IV. That the said complainants have not, by the said bill, alleged any cause sufficient in law to authorize this court to set aside the decree of discharge in bankruptcy in favor of this defendant, rendered by the District Court of the United States, as set forth in said bill.

V. That the said complainants, by the allegations of said bill, show that the claims held by them, if they ever were due to them by this defendant, have become discharged by lapse of time, and barred by the statute of prescription and limitation.

VI. That the said complainants, by the allegations of said bill, show such laches as by the principles and rules of equity deprives them of any right to claim relief or remedy in this court.

VII. That the said complainants have not, by the showing contained in their said bill, made out a case entitling them to relief either at law or in equity.

Wherefore this respondent demands the judgment of this honorable court, whether he shall be compelled to make any other or further answer to the said bill, or any of the matters and things therein contained, and prays to be hence dismissed with his reasonable costs in this behalf sustained.

(Signed)    BENJAMIN, BRADFORD, & FINNEY, *Solicitors.*

I certify that, in my opinion, the foregoing demurrer is well founded in point of law.

(Signed)                J. T. BENJAMIN, *of Counsel.*

Henry S. Buckner, being duly sworn, deposes that the foregoing demurrer is not interposed for delay.

(Signed)                HENRY S. BUCKNER.

Sworn to and subscribed before me, this 1st of October, 1855.

(Signed)            J. W. GURLEY, *Commissioner.*

The stating part of the bill of the complainants, their prayer for relief, and the demurrer of the defendant, suggest that our first point of inquiry in this case should be into the power of the Circuit Courts of the United States to entertain an original bill, to annul or vacate a decree discharging a bankrupt, either in whole or in part, for any of those frauds upon the act of the 1st August, 1841, which would prevent the bankrupt from receiving a discharge. No such jurisdiction is given by the act to the Circuit Courts. The jurisdiction of these courts

under the act exists in three cases: First, when a question has been adjourned into a Circuit by the District Court, under the 6th section of the act. Second, by appeal, as that is given, under the 4th section, to the bankrupt, when a majority of his creditors in number and value, who shall have proved their debts, shall file their written dissent from his discharge. Third, the jurisdiction given to the Circuit Courts by the 8th section, in suits by an assignee of the bankrupt, against any person claiming an adverse interest, or by such person against the assignee for property, or rights of property, transferable to or vested in the assignee under the act. If we cannot find such a jurisdiction in the Circuit Courts in the act of 1st August, 1841, it is in vain to look for it elsewhere, for the purposes for which this bill has been brought.

The inquiry then must be, if the Circuit Court has jurisdiction, to annul the decree of the discharge given to the bankrupt by the District Court, for frauds upon that act, which would have prevented him from receiving a discharge and certificate. In other words, has not the District Court of the United States, in which the bankrupt's discharge was given, and that court only, the power to inquire into frauds upon the act discovered after the bankrupt has received his discharge, with a view to annul it, and to give to his creditors, who have proved their debts, the benefit of the property he may have concealed, or the preferences he may have given, or transfers of property he may have made in contemplation of bankruptcy? It seems to us that the jurisdiction given by the 6th section of the bankrupt act to the District Court is plenary and exclusive for such a purpose. The words of the 6th section are: "That the District Court, in every district, shall have jurisdiction in all matters and proceedings in bankruptcy arising under this act, and any other act which may hereafter be passed on the subject of bankruptcy; the said jurisdiction to be exercised summarily in the nature of summary proceedings or equity, and for this purpose the said District Court shall be deemed always open. And the district judge may adjourn any point or question arising in any case of bankruptcy into the Circuit Court for the district, in his discretion, to be there heard and determined, and for this purpose the Circuit Court of such district shall be deemed always open. The jurisdiction hereby conferred on the District Court shall extend to all cases and controversies in bankruptcy arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to all cases and controversies between such creditor or creditors and the assignee of the estate, whether in office or removed; to all cases and controversies between such

assignee and the bankrupt; and to all acts, matters, and things, to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy. And the said courts shall have full authority and jurisdiction to compel obedience to all orders and decrees passed by them in bankruptcy, by process of contempt, and other *remedial process*, to the same extent the Circuit Courts may here do in a suit pending therein in equity. And it shall be the duty of the District Court, in each district, from time to time, to prescribe suitable rules and regulations, and forms of proceedings, in all matters of bankruptcy; which rules and regulations and forms shall be subject to be altered, added to, revised, or annulled, by the Circuit Court of the same district, and other rules and regulations and forms be substituted therefor."

Our reflections upon this section as a whole, and particularly upon that clause or sentence of it which extends the jurisdiction of the court to all controversies between the bankrupt and a creditor, *who shall claim any debt or demand under the bankruptcy*—to all cases between creditors and the assignee of the estate, whether the latter continues in office or has been removed, and to all controversies between the assignee and the bankrupt—have brought us to the conclusion that it was meant to give jurisdiction to the District Court, either at the suit of the assignee or of the creditor, just in such a controversy as the complainants have made by their bill; with the power in the court, in a suit of either the assignee or the creditor, or both combined, to inquire into the fraudulent preferences alleged to have been given by the bankrupt in contemplation of bankruptcy; and when they shall have been satisfactorily proved, to revoke the decree of discharge which had been given to him, to prevent it thereafter from being pleaded as a bar to any suit which may be brought against him, for any demand which was provable under the act. Or the assignee alone may sue the bankrupt and his accomplices in the District Court, for any preferences he may have given to creditors in contemplation of bankruptcy, to recover the amount of such preferences, as a part of the bankrupt's estate for distribution among his creditors who have proved their debts under the act, and with the additional object of revoking the bankrupt's discharge by a decree of the court. In either suit for the latter purpose, the assignees and the creditors who have proved their debts under the act, may be the parties on the one side, and the bankrupt and those who conspired with him to commit the fraud upon the act, should be made parties on the other. If it be intended only to recover the amounts of fraudulent

preferences, as a part of the bankrupt's estate, the assignee may sue the bankrupt and those who have received them, or the latter alone, giving to the bankrupt prior reasonable notice, specifying in writing the fraud or concealment which it is the object of the suit to investigate, so that he may be present at the trial to defend himself; or to petition the court to be made a party defendant to the suit, for the same purpose. And in such a case, the jurisdiction of the District Court should be exercised summarily, in the nature of summary proceedings in equity, such being the direction in the sixth section of the act, for all proceedings in bankruptcy under it.

These conclusions are verified into unquestionable certainty, by considering in connection other parts of the bankrupt bill.

By the third section of it, the property of the bankrupt, of every kind whatever, from the time of his discharge, by mere operation of law, is deemed to be divested out of him, and becomes vested by force of the decree in the assignee who may be appointed for the benefit of such of the bankrupt's creditors who have come in and proved their debts, for the purpose of becoming distributees equally of the bankrupt's estate, to the exclusion of all creditors who have not done so. Then, by the second section, the amount of preferences which may have been given in contemplation of bankruptcy, are declared to be a part of the bankrupt's estate. It is the duty of the assignee to sue for them, and the bankrupt who has made them, when they have been proved, cannot be allowed a *discharge under the provisions of the act.* And that this disability to receive a discharge was meant to apply prospectively to preferences which might be given, and retroactively to such as had been given in contemplation of bankruptcy, or to such preferences, whether given before the decree of discharge or after it, is manifest from the whole language of the fourth section, particularly that part which makes a *bona fide* surrender by the bankrupt of all his property and rights of property, for the benefit of his creditors, one of the prerequisites of his being discharged from all of his debts; and declares, that if the bankrupt shall be guilty of any fraud or wilful concealment of his property or rights of property, or shall have preferred any of his creditors, contrary to the provisions of the act; or, if he admits a false and fictitious debt against his estate, that he shall not be entitled to such discharge or certificate. Further, the 5th section declares, that no creditor or other person, coming in and proving his debt or other claim, shall be allowed to maintain any suit at law or in equity *therefor*, but shall be deemed *thereby* to have waived all right of action and suit against such bankrupt; which, while it excludes such a creditor from bringing a suit at law or in

equity in any other court for his original debt, which had been proved against the bankrupt, cannot be construed to mean that he could not resort to the District Court, which had been deceived into granting the discharge, for the purpose of investigating the frauds which may have been committed by the bankrupt before a discharge had been granted to him, but not discovered until afterwards; and for the further purpose of obtaining from the District Court an annulment of the discharge which had been obtained from it by perjury and fraud. In this we do not differ from the counsel of the complainants, for much of his argument was intended to show that the creditors of a bankrupt are not without a remedy for frauds committed by him, but not discovered until after he had received his certificate of discharge. That was the case of Haxton *v.* Corse, (2 Bar. Ch., 507,) decided by Chancellor Walworth. The chancellor's language is, that he could not conclude, "notwithstanding the general language contained in the fifth section of the act, that the creditors who come in and prove their debts shall not be allowed to maintain any suit at law or in equity therefor, and that the law-makers did not intend that the proving of debts by creditors should be an absolute abandonment of all claim against the future acquisitions of their debtor, if his discharge was refused, or if it was void for any of the frauds specified in the act." We admit the principle, that creditors so circumstanced have a remedy, but not that they may use it in any suit at law or in equity in the Circuit Court. The bankrupt law has given to the District Court a plenary and exclusive jurisdiction in all matters and proceedings in bankruptcy. We say plenary and exclusive jurisdiction in the District Court. This court has said so in Shawhan et al. *v.* Wherritt, (7 How., 643.) Besides, on the authority of the same case, we say, as all the proceedings in all cases in bankruptcy are made matters of record by the thirteenth section, *that a party to one of them* cannot be permitted to impeach it collaterally in another suit in another court, brought by him there to recover from the bankrupt his original debt, whilst he continues to occupy his relation to the assignee and the bankrupt, under the discharge of the latter, as one of the creditor distributees of his estate. The District Court has by the act plenary and exclusive jurisdiction of the matter, and no other court can annul the decree of the bankrupt's discharge, either partially, for the benefit of a particular creditor, or wholly, to deprive the bankrupt of its operation.

This we say, with direct reference to the parties in this suit, who were parties to the decree of the bankrupt's discharge, who proved their debts, and who have taken a dividend from

his estate. We do not mean to say anything of the Circuit Court's jurisdiction in a _suit brought by a creditor who had not come in and proved his debt, and who is not a party to the decree in bankruptcy._ These are points which will no doubt be well considered by counsel before a suit shall be brought; directly in connection with the power given to such a creditor to impeach the discharge, when the bankrupt shall plead it in bar of a suit. But the manner of bringing such a suit by such a creditor, how, when, or in what court, it should be brought, we shall not decide until such a case shall be brought regularly here for adjudication.

We will now consider another point in the case, necessarily arising from the frame of the bill, which was argued by the counsel for the complainants, with some earnestness. It is, whether the Circuit Court had jurisdiction of _the subject-matter of the bill_, on account of the frauds alleged against the defendant.

The complainants, in their bill, state minutely the original indebtment of the bankrupt to them, particularize the fraudulent preferences he had given to other creditors in contemplation of bankruptcy, admit that they were parties to the bankrupt's discharge, and had taken a dividend; and then they ask for the intervention of the Circuit Court in equity, to set aside the bankrupt's discharge as to them, _because it had jurisdiction in cases of fraud;_ and that it would adjudge, that the defendants shall pay to them their original debt, with interest, on account of their ignorance of the frauds of which they complain, until within two years before they brought their bill. And for the same cause they say, that they had not brought their action at law upon their original cause of the defendant's indebtment.

The bill of the complainants, then, is a suit to recover from the defendant the debt which they had proved in bankruptcy. It has generally been thought, and has been frequently decided judicially, that the fifth section of the bankrupt act was a bar to a suit where a party proves his claim and takes a dividend. In England, though such suits were attempted in the earlier administration of her bankrupt laws, such an action would not be thought of now for a moment. The words of our statute are, "and no creditor or other person, coming in and proving his debt or other claim, shall be allowed to maintain any suit at law or in equity _therefor_, but shall be deemed _thereby_ to have waived all right of action and suit against such bankrupt; and all proceedings already commenced, and all unsatisfied judgments already obtained thereon, shall be deemed to be surrendered thereby." How, then, can it be, that a creditor, coming in and proving his debt and receiving a dividend, can be

allowed to sue the bankrupt for it afterwards, either at law or in equity, when it is declared, in positive and unmistakable words, that if the creditor, before proving his debt, had commenced an action for it, or had obtained a judgment for it, he shall be deemed to have surrendered it, and to have waived all right of action and suit, either in law or in equity, against such bankrupt, for the debt which he has proved? It cannot be done; and the disability of such a creditor to sue the bankrupt is in perfect harmony with every other part of the statute of the 19th August, 1841, and with all the rights of creditors which are meant to be secured by it.

Moreover, the exclusion of such a creditor to sue the bankrupt, is sustained by all of the decisions in the courts of England upon the statutes of bankruptcy.

Lord Hardwicke said, in *ex parte* Groome, 1 Atk., 119—when such a right was claimed by a creditor upon a similar provision in the statute of George II, chap. 30, sec. 7, (by no means so expressive as that just cited from the act of the 19th August, 1841)—"I think that the privilege of creditors to come in, and of bankrupts to be discharged from debts, is coextensive and commensurate, and very equitable, for it would otherwise make an irregularity among the creditors; for a creditor whose debt was due before the taking out of the commission shall, perhaps, have more than five shillings in the pound; and the creditor whose debt was not due till a second distribution shall come in and have as much as the other creditor, and likewise have a remedy open to him for the rest against the bankrupt." Therefore a creditor shall not prove his debt, receive a dividend, and proceed afterwards in an action at law against the bankrupt. In such cases in England, the creditor is put to his election, whether he will come in and prove his debt, or pursue his remedy at law. With us, he has the same privilege. In *ex parte* Goodwin, 1 Atk., 152, Lord Hardwicke said: "This court will not suffer a *petitioning creditor* to arrest a bankrupt, and for this reason—because a commission of bankruptcy is considered both as an action and an execution in the first instance; and after the petitioning creditor had laid hold of all of the bankrupt's effects, it would be a great absurdity for the same person to be permitted to arrest him likewise." In regard to the creditor having made an election, his Lordship ruled, in *ex parte* Ward, 1 Atk., 153, that a *petitioning creditor* determines his election by taking out a commission, and cannot sue the bankrupt at law, though for a debt distinct from what he proved.

In *ex parte* Ward, 1 Atk., 153, it was also ruled that a petitioning creditor's right of election does not exist after the bankrupt has received his certificate; and when the creditor has

already proceeded at law, he is not at liberty to come in and prove his debt under the commission, without relinquishing his proceedings at law, unless by order of the great seal, for the purpose of giving his assent or dissent to the certificate. In Capon's case, 1 Atk., 219, Lord Hardwicke declared, "it was by no means to be done that a creditor was to receive a proportionable benefit under the commission, and still pursue the bankrupt's person at law;" and he would not permit the creditor, in that case, who had proceeded at law after he had received two dividends, to assent to or dissent from the bankrupt's certificate, until he had refunded the dividends he had taken under the commission. In Lindsay's case, 1 Atk., 220, he petitioned to be discharged from a commitment at the suit of his creditor, Henkle, who had proved his debt. The Lord Chancellor said the creditor must either waive his proof under the commission, or make his election to proceed under it; but, notwithstanding, if he elects to proceed at law, he may still assent or dissent to the certificate.

In Dorvillier's case, his creditor had proved a debt for £800 under the commission, and being the majority in value of all the creditors, had chosen himself assignee, as he had the right to do under the statute. He brought an action at law for the debt which he had proved against the bankrupt. The bankrupt petitioned that his creditor should make his election to proceed under the commission or to proceed at law. The Lord Chancellor doubted whether, by choosing himself assignee, was not making an election; but upon the creditor's having elected to proceed at law, he discharged him as a creditor under the commission, but still allowed him to assent or dissent to the bankrupt's certificate.

In Aylott *v.* Harford & Richards, bail of Lowe, 2 Blackstone's Reports, 1317, the creditor had proved his debt under the commission, and had voted in the choice for assignees, and had subsequently made an agreement with the bankrupt that he should keep open his hotel for business. The bankrupt absconded. The creditor brought an action against the bail of the bankrupt, contending that, as Lowe had absconded, he had forfeited the protection of his commission, and that the bail was to follow the fate of his principal. De Grey, C. J., refused to fix the bail, and said, there are some instances in which the Court of Chancery permits a creditor to do certain acts, such as proving his debt and voting for assignees, without binding him to come under the commission and renounce his legal remedy. But the plaintiff has gone much further, especially by the transaction of the 25th of August. He has made his election, has acquiesced under the commission, and he shall

not, on a subsequent unforeseen event, at the distance of twelve months, desert the commission, and come on the bail by surprise. (White *ex parte*, 2 Ves. Rep., 9; 2 Bro. C. C., 114.)

These citations, then, show how the comprehensive equity of Lord Hardwicke, upon an indefinite statute of George II, anticipated the more perfect legislation of 49 George III, c. 121, s. 14, and that of 6 George IV, c. 16, s. 59, upon the same subject.

The first provides, "that after the 29th June, 1809, it shall not be lawful for any creditor, who has or shall have brought any action or instituted any suit against any bankrupt in respect of any demand which arose, prior to the bankruptcy, or which might have been proved as a debt under the commission, to prove a debt under such commission for any purpose whatever, or to have the claim of debt entered upon the proceedings under such commission, without relinquishing such action, a suit, and all benefit from the same; and that the proving or claiming a debt under a commission by any creditor shall be deemed an election by such creditor to take the benefit of such commission with respect to the debt so proved or claimed by him." The statute of George IV is, "that no creditor who has brought an action or instituted a suit for a demand arising prior to the bankruptcy, or which might have been proved, shall prove a debt or enter a claim for it, without relinquishing such action or suit, and all benefit from the same, the proving a debt or entering a claim to be deemed an election." Our statute is as comprehensive as either of those, and was taken from them, though not expressed in the same words. Indeed, the three are an embodiment of the decisions of the courts which were made from Lord Hardwicke's time in the administration of the bankrupt law; and the construction of the English statutes in their courts since has been in conformity with the earlier decisions.

In Adames *v.* Bridge, (8 Bingh. Rep., 314,) in an action of debt upon a bond, in which a rule *nisi* had been obtained 'to stay proceedings commenced in 1831, it appeared by an affidavit that the defendant had been a bankrupt in 1816, and that the plaintiff had elected to prove under the commission sued out at that time. Tindall, C. J., ruled that plaintiff, having proved under a commission of bankruptcy in 1818, was estopped to sue for the same debt after the passing of 6 George IV, c. 16, though that repeals 49 George III, c. 121, and makes proof of a debt an election not to sue. The Chief Justice added, the fallacy in the argument is in considering the election to prove as an incomplete act. It was a complete act to effect a discontinuance, and after such a lapse of time, the rule must be dis-

charged with costs. In some of its features, that case is not unlike that which we have been considering.

Joseph *ex parte* (18 Ves., 340) establishes the same principle; also, Dickson, (1 Rose, 98;) Boslock's case, (1 Dea. and Chit.,) the same. A like interpretation has been given to the fifth section of the act of 19th August, 1841, by Chief Justice Tenney, (in 31 Maine Rep., 192,) in the case of Humphrey and Small, and by Mr. Justice Hardy, in the case of Buckner & Stanton *v.* Calcote, (in 28 Miss., 390.) Both are able constructions of the statute of the 19th August, 1841, from the statute itself, and they command our entire assent.

Our conclusions in this case are, that the Circuit Courts of the United States have not jurisdiction to annul or vacate the discharge and certificate in bankruptcy obtained in the District Court, upon imputations of fraud done in contemplation of bankruptcy by the bankrupt; or to give relief, either at law or in equity, in a suit brought by a creditor who had proved his debt under the commission, who had assented to the bankrupt's discharge and certificate, and who has taken a dividend out of the bankrupt's estate. These conclusions relieve the case of all difficulty, and make it unnecessary for us to discuss any of the other points which were made by counsel on either side in the argument.

We add a word more. It was frequently urged in the argument, by the counsel for the complainants, that the demurrer of the defendant was a confession of the frauds alleged in the bill, and that therefore the Circuit Court had jurisdiction to give relief.

Our view of that demurrer is different. It is only a confession of all facts *well pleaded,* but in this bill none were so; the power of the court to give relief, and of the complainants to bring a suit, either at law or in equity, for the original debt which they had proved in bankruptcy, having been mistaken.

The dismission of the bill by the court below is affirmed.

Mr. Justice NELSON concurs in the result of the opinion of the court in this case.