CUSTARD, Respondent, vs. WIGDERSON, imp., Appellant.

*December 8, 1906—January 8, 1907.*

*Appeal and error: Direction of verdict: Conflict of evidence: Bankruptcy: Discharge: Collateral attack: Failure to schedule debt: Mistake in spelling name of creditor.*

1. It is error to direct a verdict upon conflicting testimony.
2. Where a discharge in bankruptcy is in due form, whether the proceedings in the bankruptcy court upon which the discharge is based are regular or not cannot be questioned collaterally.
3. In an action on a note given to plaintiff "A. Custard" before the defendant was discharged under the federal bankruptcy act, it appeared, among other things, that a claim was scheduled in the bankruptcy proceedings under the name of "A. Castard." *Held*, under sec. 17, ch. 541, 30 U. S. Stats. at Large (providing that a discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as have not been duly scheduled), that the debt to "A. Custard," the plaintiff, who had no notice or actual knowledge of the bankruptcy proceedings, was not scheduled by the appearance in the schedules of the name of "A. Castard" as a creditor, and was not discharged.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

This action was brought to recover upon two promissory notes for $100 each, executed and delivered by defendants to plaintiff. The notes bore date June 25, 1897, and were payable one four and the other five months after date, with interest at eight per cent. after due. The complaint was in the usual form. The defendant M. Wigderson was held not liable because the wife of defendant *E. Wigderson* and not bound by the contract. The defendant P. Roman was not served with process, so the controversy here is between the plaintiff and appellant, *E. Wigderson.* The appellant answered the plaintiff's complaint, admitting the execution of the notes, but pleaded as a defense his discharge in bankruptcy. The plaintiff sought to recover on two grounds, namely: (1) That subsequent to the alleged discharge appel-

lant promised to pay the notes, the promise being made to the plaintiff as well as to his attorney; and (2) that the appellant's alleged proceedings in bankruptcy were so defective as to constitute no defense. The case was tried by the court and a jury, and after the evidence was all in the court directed a verdict for plaintiff for the amount claimed in the complaint, with costs. Appellant moved to set the verdict aside and for new trial, which motion was denied. Judgment was entered upon the verdict, and the defendant *E. Wigderson* appealed, and assigns error.

For the appellant the cause was submitted on the brief of *Foster & Morson,* and for the respondent on that of *F. F. Wheeler.*

KERWIN, J. The errors complained of on this appeal may be classified under two heads: First, whether the court erred in directing a verdict for plaintiff; and, second, whether the bankruptcy proceedings constituted a defense to the notes in suit.

1. There is a sharp conflict in the evidence as to whether or not the appellant promised, after the bankruptcy proceedings, to pay the notes, the respondent and his attorney testifying that such promise was made. The appellant flatly denies such promise. So whether or not a promise was made to pay the notes, as contended by plaintiff, was clearly a question for the jury. It is therefore obvious that the court below must have directed a verdict upon the ground that the alleged bankruptcy proceedings constituted no defense. This seems clear from a remark of the trial judge appearing in the rec-. ord. It is very clear that, if the bankruptcy proceedings were a defense, the court erred in directing a verdict for the plaintiff upon the conflicting testimony. This brings us to a consideration of the question of the effect of the bankruptcy proceedings, and whether error was committed in holding that such proceedings constituted no defense.

The appellant set up in his answer the order of discharge in bankruptcy, and, after plaintiff had closed his case, put such order in evidence; also offered in evidence the petition and schedule of creditors, which included the name "A. Castard," together with residence Waupaca, Wisconsin, amount $200, contracted at Waupaca, Wisconsin, consideration money borrowed, note given dated 1897. The appellant also offered to prove that the "A. Castard" mentioned in the schedule was intended to be the plaintiff, and scheduled as a creditor, and that the spelling of the name "Castard" instead of "Custard," in the schedule, was a clerical error. On rebuttal plaintiff put in evidence a certified copy of appellant's petition in bankruptcy proceedings, for the purpose of showing that such petition failed to state residence or domicile for six months preceding the filing of petition, and also failed to state occupation; also offered in evidence certified copy of verification to said petition, for the purpose of showing that the verification was taken before appellant's attorney in the bankruptcy proceedings; also offered in evidence certified copy of schedule of creditors, for the purpose of showing that the schedule was not properly verified, and that the name A. Custard, plaintiff, does not appear, and that the amount of indebtedness, or date of same, is not given; also offered certified copy of entire record in bankruptcy proceedings, except the order of discharge.

The respondent attacks the bankruptcy proceedings substantially upon the following grounds: (1) That the petition in bankruptcy is so jurisdictionally defective that no valid discharge could be granted; (2) that the indebtedness of appellant to respondent was never scheduled; (3) that no notice that appellant had been adjudged a bankrupt and of the first meeting of creditors was given by the referee or clerk; (4) that no copy of petition asking for discharge of appellant, and the order based thereon, were sent to or received by respondent; (5) that appellant signed and swore to his petition before his attorney in bankruptcy.

It does not appear from the record that the appellant was not a resident and domiciled in the district where the discharge in bankruptcy was granted; but it is contended that the petition is defective in failing to properly state the residence and domicile of the appellant and in not being properly verified. We think, however, that these questions cannot be reviewed here. The decree of discharge is in due form, and whether the proceedings in the bankruptcy court upon which this decree is based are regular or not cannot be questioned collaterally. The decree is made by the Bankrupt Act itself evidence of the regularity of the proceedings and the jurisdiction of the court to render the decree. Ch. 4, sec. 21, subd. "f," of the Bankrupt Act of 1898 [Act July 1, 1898, ch. 541, 30 U. S. Stats. at Large, 552; U. S. Comp. Stat. 1901, p. 3431] provides, in effect, that a certified copy of the order granting a discharge shall be evidence of the jurisdiction of the court, the regularity of the proceedings, and the fact that the order was made. The order of discharge, therefore, having been put in evidence, was proof of the appellant's discharge in bankruptcy, and cannot be impeached collaterally. This provision of the Bankrupt Act, making the order of discharge evidence of the jurisdiction of the court and the regularity of the proceedings, was obviously intended to dispense with proof of antecedent steps in the proceedings. The decisions under the Bankruptcy Act of 1867 [Act March 2, 1867, ch. 176, 14 U. S. Stats. at Large, 517] are not entirely uniform on the question of collateral attack, although the weight of authority appears to be that a discharge was not subject to attack collaterally under the act. Collier, Bankr. (5th ed.) 192; Brandenburg, Bankr. (3d ed.) § 398, and cases cited in note. So, too, it has been held that, where provision is made in the bankruptcy court for setting aside the decree of discharge, this proceeding is exclusive. Brandenburg, Bankr. (3d ed.) § 397, and cases cited; Collier, Bankr. (5th ed.) 192, 193. This court has held that a discharge in bankruptcy cannot be attacked collaterally. *Thomas v. Jones,*

39 Wis. 124. In the case before us it is clear that the order of discharge is not open to attack. Brandenburg, Bankr. (3d ed.) § 398; Collier, Bankr. (5th ed.) 192, 193; 1 Black, Judgm. § 248; *In re Shaffer,* 104 Fed. 982; *Commercial Bank v. Buckner,* 20 How. 108; *Michaels v. Post,* 21 Wall. 398; *Black v. Blazo,* 117 Mass. 17; *Rayl v. Lapham,* 15 N. B. R. 508; *Howland v. Carson,* 16 N. B. R. 372; *Thomas v. Jones, supra; Osborn v. Dobrinz,* 85 Wis. 252, 55 N. W. 403.

·2. But, while the order of discharge cannot be attacked, a more serious question arises as to whether the debt of the respondent sued upon was discharged by the bankruptcy proceedings. Under the bankruptcy law of 1867 this court held, in harmony with the general current of authority, that a debt was discharged even though not scheduled. *Thomas v. Jones, supra; Osborn v. Dobrinz, supra.* But it will be seen that under the act of 1867 debts not scheduled were not excepted from the operation of discharge, while under the Bankruptcy Act of 1898 they are. Sec. 17 of the Bankruptcy Act of 1898 provides that a discharge in bankruptcy "shall release a bankrupt from all of his provable debts, except such as . . . have not been duly scheduled. . . ." This provision is a marked departure from former bankruptcy acts, and decisions under such acts, to the effect that scheduling was not necessary in order to bring the debt within the order of discharge. The words of the present act, however, are plain and unambiguous, and there can be no doubt that they mean what they say; and, if so, unless the debt is duly scheduled in time for proof and allowance, or the creditor had notice or actual knowledge of the proceedings in bankruptcy, it is not affected by the discharge. The evidence shows that the respondent had no notice or actual knowledge of the bankruptcy proceedings, and therefore, if the debt was not duly scheduled, it is not affected by the bankruptcy proceedings. Sec. 17, Bankr. Act 1898; Collier, Bankr. (5th ed.) 214.

So far as the courts have spoken upon the subject since the Bankruptcy Act of 1898, they hold that extreme exactness must be used in scheduling the creditors by name in the bankruptcy proceedings. Collier, Bankr. (5th ed.) 214; Brandenburg, Bankr. (3d ed.) § 216, and note; *Liesum v. Kraus,* 35 Misc. 376, 71 N. Y. Supp. 1022; *Columbia Bank v. Birkett,* 174 N. Y. 112, 66 N. E. 652, 9 Am. B. R. 481; *Birkett v. Columbia Bank,* 195 U. S. 345, 25 Sup. Ct. 38; *In re Mackey,* 1 Am. B. R. 593, 596; *Westheimer v. Howard,* 93 N. Y. Supp. 518, 14 Am. B. R. 547; *Haack v. Theise,* 99 N. Y. Supp. 905, 16 Am. B. R. 699. An examination of the foregoing cases will show that courts have held to a strict rule in requiring debts to be duly scheduled in accordance with the provisions of the act.

In *Liesum v. Kraus, supra,* the creditor's name was George Liesum and was scheduled "George Liesman," and it was held that the debt was not discharged because the name was not properly entered in the schedule. In *Haack v. Theise, supra,* the name of the creditor James Haack was scheduled "James Haack and wife," and ditto marks were used to indicate residence, and the court held that the debt was not duly scheduled. The court said:

"These features of the present act, when contrasted with the provisions of preceding acts, indicate a legislative intent that greater strictness shall prevail in notifying the creditor of the various proceedings in bankruptcy."

In *Columbia Bank v. Birkett,* 174 N. Y. 112, 66 N. E. 652, 9 Am. B. R. 481 (affirmed in 195 U. S. 345, 25 Sup. Ct. 38), the court said:

"In my opinion there are features in the present bankruptcy act which differentiate it from preceding acts, and which indicate a legislative intent that greater strictness shall prevail in notifying the creditor of the various proceedings in bankruptcy."

Subd. 8, sec. 7, of the Bankruptcy Act of 1898 [Act July 1, 1898, ch. 541, 30 U. S. Stats. at Large, 548; U. S. Comp.

Stat. 1901, p. 3425] provides that the schedule shall contain a list of the bankrupt's creditors, "showing their residences, if known, if unknown, that fact to be stated, the amounts due each of them, the consideration thereof, the security held by them, if any. . . ." Under the strict rule which prevails respecting the scheduling of debts by the bankrupt, we think it clear that the debt of *A. Custard* was not duly scheduled, within the meaning of the Bankruptcy Act, by the appearance of the name "A. Castard" in the schedule. Therefore, since *A. Custard,* respondent, had no notice or actual knowledge of the bankruptcy proceedings, the debt sued upon was not discharged, and the judgment of the court below, therefore, must be affirmed.

*By the Court.*—Judgment affirmed.

