## ATLANTIC DYNAMITE CO. v. REGER et al.

(District Court, N. D. West Virginia. November 15, 1912.)

### No. 54.

**1. EQUITY (§ 287\*)—BILL—DEMURRER—INFORMALITY—CORRECTION.**

Where a demurrer to a bill was informal, in that no certificate of counsel that in his opinion it was well founded in point of law, nor affidavit of defendant that it was not interposed for delay, was attached, such informality was not fatal but could be corrected nunc pro tunc.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 580; Dec. Dig. § 287.\*]

**2. BANKRUPTCY (§ 417\*)—DISCHARGE—VACATION—COLLATERAL ATTACK—EQUITY JURISDICTION.**

Bankruptcy Act July 1, 1898, c. 541, § 15, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), provides that the judge, on application of parties in interest not guilty of undue laches, filed within a year after a discharge shall have been granted, may revoke it on a trial, if it shall be made to appear that it was obtained through the fraud of the bankrupt and that knowledge of the fraud has come to the petitioners since the granting of the discharge, and that the actual facts did not warrant it. *Held*, that such jurisdiction to revoke a discharge is exclusive, and that a federal court of equity in a district other than that in which the discharge was granted had no jurisdiction to set it aside for fraud.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.\*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

In Equity. Suit by the Atlantic Dynamite Company against Shelton L. Reger and others. On demurrer to bill. Sustained, and bill dismissed.

Cyrus H. Scott, of Elkins, W. Va., for plaintiff.
R. F. Kidd, of Glenville, W. Va., for defendants.

KELLER, District Judge. This matter is before me upon demurrer to the bill interposed by Elmer H. Elliott in his own right and as executor of Julia A. Elliott, deceased, and by Caroline Starcher.

[1] The written demurrers are informal, not conforming to equity rule 31, in that there is neither the certificate of counsel that in his opinion the demurrer is well founded in point of law, nor the affidavit

of the defendant that the same is not interposed for delay; but this informality is not fatal, and the court can and would permit such certificate and affidavit to be appended to the written demurrer nunc pro tunc.

[2] But independent of any formal demurrer, there is a provision in the thirty-seventh section of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1098 [U. S. Comp. St. Supp. 1911, p. 146]) which renders it proper and necessary for the court of its own motion to consider some of the matters which would arise upon the demurrer. That section provides that:

"If in any suit commenced in a District Court or removed from a state court to a District Court of the United States, it shall appear to the satisfaction of the said District Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said District Court, * * * the said District Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just."

Proceeding then under the provisions of this section, inquiry arises as to the purpose of this bill and the necessary effect of entertaining it.

The bill is brought by the Atlantic Dynamite Company, a corporation of the state of New Jersey, against Shelton L. Reger, James B. Elliott, administrator with the will annexed of L. C. Elliott, deceased, Elmer H. Elliott in his own right and as executor of the last will and testament of Julia A. Elliott, deceased, Caroline Starcher, Mary Frances Elliott, Bernard Price, and David W. Call, trustee, all of whom are averred to be citizens and residents of the Northern district of West Virginia, so that the suit is an ordinary suit in equity, brought in the District Court of the United States, invoking its general equity jurisdiction, and based on an alleged diversity of citizenship between the parties plaintiff and defendant.

The bill alleges, inter alia, that in 1894 complainant recovered a judgment for over $4,500 against defendant Shelton L. Reger upon an account which accrued in 1888 and 1889; that in 1889 it instituted suit upon the said account; and that while said suit was pending (on January 25, 1890, and subsequent dates) said Reger conveyed and caused to be conveyed various tracts of land to one L. C. Elliott, and in various other ways sought to place his property (real estate) out of his hands for the purpose of concealing the same in order to hinder, delay, and defraud the complainant in the collection of its debt. After very full and detailed allegations as to the methods and transactions by which it is alleged that the title of said Reger to lands owned by him was placed in the name of L. C. Elliott with the understanding and agreement that upon sale of said lands, and after payment of sums of money advanced by said Elliott, the remainder of the purchase money was to be paid over to said Reger, the bill proceeds to aver that the said Reger "on the 2d day of February, 1900, went into voluntary bankruptcy, filed a pretended schedule of liabilities, making the complainant, as well as the said L. C. Elliott, parties defendant [sic] therein, and afterwards such proceedings were had in that behalf that a discharge was entered in favor of said Reger."

The bill further charges that the schedules and reports of assets of said Reger were false and fraudulent and were known to be so by said Elliott who, like complainant, was a scheduled creditor of Reger.

The prayer of the bill is that:

"The proceedings in bankruptcy, voluntarily instituted by the said defendant Reger, and the discharge and release of the indebtedness of the complainant, may be revoked, set aside, and canceled as fraudulent and void," and that "complainant may recover from the said Reger, and from the said Elmer H. Elliott, executor of the last will and testament of the said Julia A. Elliott, deceased, and from the said Elmer H. Elliott and Caroline Starcher, devisees of the said last will, the full amounts of the judgment aforesaid remaining due and unpaid to the complainant from the said defendant," etc.

We are thus informed from the bill itself that its purpose is to collaterally attack and set aside an order of discharge entered by the District Court of the United States for the Northern District of West Virginia sitting in bankruptcy, and to subject the assets of the alleged bankrupt to the payment of complainant's judgment duly scheduled in said bankruptcy proceeding and from the payment of which said bankrupt was, by said order, discharged.

Has a court of equity any jurisdiction to entertain such a bill?

The only provision of law for the revocation of a discharge is found in section 15 of the Bankruptcy Act of 1898, which reads as follows:

"The judge may, upon the application of parties in interest who have not been guilty of undue laches, filed at any time within one year after a discharge shall have been granted, revoke it upon a trial if it shall be made to appear that it was obtained through the fraud of the bankrupt, and that the knowledge of the fraud has come to the petitioners since the granting of the discharge, and that the actual facts did not warrant the discharge."

Under the act of 1867 the period within which application could be made to vacate the order of discharge of a bankrupt was two years instead of one year, but in other respects was similar to the present act.

The act of 1841 contained no limitation of time within which a discharge might be set aside, and no direct provision for the impeachment of such order; yet in Commercial Bank v. Buckner, 20 How. 108, 15 L. Ed. 862, it was held that the Circuit Courts of the United States had not jurisdiction to annul or vacate the discharge and certificate in bankruptcy obtained in the District Court, upon imputations of fraud done in contemplation of bankruptcy by the bankrupt.

In the same case it was held that:

"The bankrupt law has given to the District Court a plenary and exclusive jurisdiction in all matters and proceedings in bankruptcy. We say plenary and exclusive jurisdiction in the District Court. This court has said so in Shawham et al. v. Wherritt, 7 How. 643, 12 L. Ed. 854."

In Nicholas v. Murray, Fed. Cas. No. 10,223, Judge Deady said:

"There is no doubt but that a direct proceeding to annul a discharge must be brought in the District Court which granted it, and the better opinion seems to be that it cannot be attacked or called in question otherwise or elsewhere."

Treating of section 15, Mr. Loveland observes:

"This provision prescribes the form, the time within which, and the grounds upon which direct proceedings to impeach a discharge may be had. The rem-

edy thus given is exclusive. The application must be made to the court which granted the discharge. * * * The application must be filed within one year after the discharge has been granted, and by one who has not been guilty of undue laches." 2 Loveland (4th Ed.) pp. 1406, 1407.

Mr. Collier, treating of this subject, says:

"A. Collateral Attack. The decisions under the law of 1867 on the question as to whether a discharge could be collaterally attacked were not entirely uniform, though the weight of authority was that a discharge once granted was not subject to attack elsewhere. There can be little doubt that this is the rule under the present law. The very nature of the proceeding results in the doctrine that the granting of a discharge is an adjudication between the bankrupt and all parties duly scheduled or with notice, amounting to res adjudicata that no other court will allow to be impeached. Besides, the present law, like its predecessor, declares that such discharge, not revoked, shall be evidence of the jurisdiction of the court, the regularity of the proceedings, and of the fact that the order was made."

"B. Jurisdiction to Revoke is Exclusive. It follows, also, under well-known canons of interpretation, that, this method of revocation being prescribed, it excludes all other methods in other courts, provided the invalidity of the discharge is based on one or more of the grounds specified in the act. It also excludes any other method amounting to an actual revocation, even in the court of bankruptcy. It seems, however, that such a court has still the usual jurisdiction, where there is no other remedy, to vary, recall, or annul its orders, including, of course, a discharge, if application is seasonably made and justice requires it. In actual practice, the only difference between such an annulment and a revocation proper is that, in the former, a valid discharge may subsequently be granted; while, in the latter, the determination is final, subject, of course, to appeal."

Collier on Bankruptcy (9th Ed.) pp. 367, 368.

It is unnecessary and probably would be improper to express an opinion upon the question whether any relief exists in the bankruptcy court. It is plain that this suit, brought in the District Court under the new Judicial Code, was brought, not in the court as a court of bankruptcy, but under the general equitable jurisdiction granted to the District Court, and hence presents the case of a collateral attack upon the validity of the discharge granted to Shelton L. Reger.

For the reasons heretofore given, I must hold that the court has no jurisdiction to entertain such a suit, and a decree may be prepared dismissing it at the cost of plaintiff.