Wright, J.
 

 An assignment by an insolvent debtor of his property to trustees for the benefit of creditors, which expressly authorizes them to sell the property upon credit, is void as against the creditors of the assignor.
 
 (Barney
 
 v.
 
 Griffin, 2
 
 Comst., 365;
 
 Nicholson
 
 v.
 
 Leavitt, 2
 
 Seld., 510.) But an assignment will not be construed as conferring this authority when its language is consistent with a different interpretation which makes it legal and valid. In
 
 Kellogg
 
 v.
 
 Slauson
 
 (1 Kern., 302), the authority to sell was conferred in the precise language of the assignment in question; yet the assignment in that case was held valid. The case is a direct adjudication of this court that a power of sale, expressed in the identical terms of the instrument under consideration, is not obnoxious to the objection that it is an authority to sell on credit, or was so Intended by the assignor. The point is tio longer open for discussion.
 
 (Whitney
 
 v. Krows, 11 Barb., 198.)
 

 There is, however, in my judgment, a fatal objection to the present assignment. The" partnership effects of an insolvent firm are assigned to pay preferred private debts of one of the partners, for which neither the firm nor his copartner were liable. There is no controversy as to the facts touching the question. In April, 1847, Crocker & Staples formed a copart
 
 *590
 
 nersliip in the mercantile business, in the county of Washington, and prosecuted the business until the 17th June, 1850, incurring firm debts for their stock in trade, among which was that on which the plaintiffs’ judgment was recovered. On the 17th June, 1850, as the referee finds, they were insolvent, and unable to pay their debts; -and, in fact, the evidence showed that they were unable to discharge in full even the claims of preferred creditors. Being thus insolvent, they executed an assignment in trust for creditors. The instrument purported to assign and transfer all the property, real and personal, of the firm, or of either of the members of it, more particularly described in a schedule annexed. It embraced partnership property wholly, with the exception of a house and lot, the individual property of Crocker, which was incumbered by two mortgages for more than the value. The assignment directed the conversion of the estate into money, and after deducting the expenses of executing the trust, the assignees, with the residue or net proceeds and avails, were to first pay and discharge in full the debts due or to become due from Crocker & Staples, or either of them, or for which they, or either of them, were liable to Joel Colvin and seven other persons (naming them), together with all interest money due or to grow due thereon; and if the avails were insufficient to discharge the same in full, then they were to be paid
 
 pro
 
 vasta. Of the eight persons enumerated in this first preferred class of creditors, it Is admitted in the answer of the defendants that five, having claims for over $1,200, were private and individual creditors of Jonathan D. Crocker, one of the assignors, and that the debts existed against Crocker at the time of the formation of the partnership, in April, 1847. In the second class of preferred creditors eleven persons were named, three of whom were the private creditors of Crocker, having claims for over $500, and which debts existed against him prior to April, 1847. The whole amount of the preferred debts was about $2,500, of which over $1,70Q were private liabilities of Crocker, whilst the value of the assigned estate was but little beyond the sum of $2,000. In the third class were partnership credi
 
 *591
 
 tors, not before preferred. In the fourth class were the private creditors of each of the assignors not before preferred; and, lastly, the surplus, if any, was reserved to the assignors jointly. The question, therefore, is distinctly presented, whether it is a fraud upon the creditors of an insolvent firm for such firm to assign the partnership effects in trust to pay the private debts of the individual members to the extent of nearly exhausting the joint fund, or to any extent, where such fund is inadequate to satisfy the creditors of the firm. The question cannot be said to be embarrassed by the irrelevant fact, found by the referee, as' to the amount of capital contributed by each of the partners in April, 1847; nor by the still further suggestion made on the argument, that it was a joint and several assignment of a mixed fund to pay both private and partnership debts. It was a joint assignment of the joint property and funds; and although Crocker’s equity'of redemption in the lot and dwelling may have'passed to the assignees under the assignment, there was nothing thereby added to the fund.
 

 The Supreme Court held that the provision violated no statute, but only a principle of the common law, which gives partnership creditors a "preference in payment out of partnership property over the individual creditors of the several partners. Hence it did not invalidate the whole assignment, by rendering it fraudulent and void. Being inequitable in reference to the partnership creditors, and an infringement of their rights, the provision was an illegal one; but, not being fraudulent, it did not vitiate any other part of the assignment. It may be true (though it is not free from doubt), that if an assignment contains- a provision to pay individual debts out of partnership property, and this is not a violation of any statute, it cannot be set aside at the instance of a single creditor seeking to appropriate the funds to his individual benefit. But it is unnecessary to follow up this inquiry, as it seems very plain that the insertion of such a provision in an assignment of the partnership effects of an insolvent firm is a violation of the statute in respect to fraudulent conveyances, and furnishes conclusive evidence of a fraudulent intent on the part of the as*
 
 *592
 
 signors. Its operation, in this case, was not only to hinder and delay the plaintiffs, as creditors of the firm, but, if successful, to cheat them out of their entire demand.
 

 It will be conceded that the creditors of the firm are, legally and equitably, first entitled to the partnership effects. Such creditors have a claim upon the joint effects prior to every other person, which the court will enforce and protect alike against the individual partners and their creditors. Indeed, the partnership property must be exhausted in satisfying partnership demands before resort can be had to individual property of the members of the firm. The firm is not liable for the private debts of one of its members, nor is there any liability resting upon the other members in respect to those debts. An appropriation of the firm property to pay the individual debt of one of the partners is, in effect, a gift from the firm to the partner—a reservation for the benefit of such partner, or his creditors, to the direct injury of the firm creditors. Can it be reasonably doubted that, when an insolvent firm assign their effects for the payment of the private debts of a member, for which neither the firm nor the other members, nor the firm assets nor the interests of the other members therein, are liable, such an assignment and appropriation are a direct fraud upon the joint creditors of the assignors ? An insolvent co-partner, says the late Chancellor, who was unable to pay the debts which the firm owed, would be guilty of a fraud upon the joint creditors, if he authorized his share of the property of the firm to be applied to the payment of a debt for which neither he nor his property was liable at law or in equity.
 
 (Kirby
 
 v. Schoonmaker, 3 Barb. Ch. R., 48;
 
 Buchan
 
 v. Sumner, 2
 
 Id.,
 
 207.) Yet the consignor and copartner, Staples, does that in this case. The prior right of the creditors, of the firm to its effects cannot be impaired by any consideration having reference to the interests of the individual partners; and anything which defeats this right, or hinders or delays such creditor in enforcing payment of his demand against the firm, from the firm property, is a violation of the statute, and a fraud upon such creditor. In this case, Crocker & Staples, in June, 1850, after
 
 *593
 
 being in business over three years, find themselves insolvent,' and unable to pay their debts. They have on hand firm property and assets (perhaps created by the partnership debts), upon which the creditors of the firm have an equitable lien, and a priority of right to enforce payment. It is possible that-the law would tolerate an assignment of this partnership pro-, perty in trust for the benefit of creditors of the firm, giving preferences among them, provided there was an absolute and unconditional surrender of the entire estate to the payment of the firm debts; but no further. The partnership, property is assigned by the firm to trustees, not to pay the partnership debts, but the preferred private debts of Crocker, one of the partners, which neither the firm nor Staples, the other partner, were liable, in law or equity, to'pay; thus not unconditionally surrendering the effects of the firm for the benefit of those to whom they rightfully belonged, but creating' a trust by which the prior right of the creditors of the firm to such effects is postponed, or hindered and delayed in its enforcement. ■ The ■ chances of the firm creditors being paid from the partnership fund are made to depend upon its sufficiency to pay the private debts of Crocker, preferred in the first and second classes of the assignment, which are to be paid in full before the plaintiffs or any other creditors of the fund, who are provided for in the subsequent classes, are to be paid "anything. This hindrance and delay is the inducement to the trust, and the main purpose for which it was created. The act defeats the right of the plaintiffs, as creditors of the firm, to seize and compel the payment of their demands against such firm from its effects; and the firm being insolvent, and its effects insufficient to reach or pay the plaintiffs, as creditors of the firm who are provided for in the third class, the assignment and its provisions not only hinder and delay the plaintiffs, but defraud them of their whole demand. Having such an effect, it cannot be doubted that the assignment was a fraud upon the plaintiffs. The firm, or Staples, was not liable, in any way, to the private creditors of Crocker; and the attempt to assign partnership property to. pay the private debts of one of the partners, when the firm !
 
 *594
 
 was insolvent, affords a conclusive presumption of an actual fraudulent design on the part of the assignors. Neither the firm nor the copartner Staples were in a condition to make a gift of the firm assets to Crocker or his creditors, or, in substance, to reserve from the joint and partnership fund the larger proportion of it for his and their benefit. It is this fraud that we should sanction by upholding the trust in the present case. In
 
 Collomb
 
 v.
 
 Caldwell
 
 (16 N. Y. R., 484), an assignment was adjudged void as to the individual creditors of the assignors, when the members of an insolvent mercantile firm assigned their partnership property, and also their individual property, in trust for the payment of their partnership debts, reserving any surplus that should remain to the assignors. The individual property of the members of the firm was appropriated to pay partnership debts, and any surplus reserved to the assignors, whilst the individual debts of one of the members of the firm were left unprovided for. This attempt to tie up the whole fund under a trust, and, after the trusts were satisfied, reserving any surplus to the assignors, without making provision for paying the individual debts, was adjudged to afford a conclusive presumption of an actual intent to defraud the individual creditors of the assignors. So, also, an 'assignment of the effects of an insolvent firm to pay the private debts of the individual members, as was done in the case at bar, hindering, delaying and postponing the collection of the demands of the company creditors, is equally fraudulent and void as to such latter creditors. Indeed, independent of the question of fraud, it may be seriously doubted whether the assignment should not be regarded as executed, and the trust made, for the benefit .of the assignors, or one of them, and thus void under the statute declaring
 
 “
 
 all transfers and assignments of goods, &c., made in trust for the use of the person making the same, void as against the creditors of such person.” (2 R. S.,
 
 135,
 
 § 1.) The assignment is made for the benefit of Crocker, as its purpose is to liquidate and discharge his individual debts. The transfer may, therefore, be said to be made in trust for the use qf gne of fhq assignors. This is the spirit of the transan
 
 *595
 
 tian, if not its legal effect. Crocker is enabled to appropriate the partnership funds to relieve himself from individual liability.
 

 The judgment of the Supreme Court, affirming the judgment of the referee, adjudging the assignment Valid and dismissing the plaintiff’s complaint must be reversed, and a new trial granted.
 

 All the judges concurring,
 

 Judgment reversed, and new trial ordered^