Bapallo, J.
The mortgages executed by John C. Smith nnd William B. Bubert appear to have been regarded by the learned referee as transferring an undivided four-fifths of the corpus of the partnership property therein described. He has found, as to the mortgage from Smith, that it was executed and delivered with the assent of the other members of the firm. This mortgage, if such be its true construction, having been given to secure the individual debt of the partner, even if effectual as to the firm, by reason of the concurrence of all the partners giving it, would be a fraudulent misapplication of the partnership property, and void, as to the creditors of the firm, under the principle of the cases of Ransom v. Van Deventer (41 Barb.,307), and Wilson v. Robertson (21 N. Y., 587), unless the firm were solvent at the time the mortgage was given, and sufficient property would remain, over and above that devoted by that instrument to the payment of the individual debt, to pay the debts of the firm. The Supreme Court have considered that the findings of the referee fail to disclose any insolvency, but, on the contrary, establish the solvency of the firm at the time the mortgages were given. We cannot concur in this view of the effect of the findings, but think that the facts found show that the firm was insolvent when the mortgages were given, and if there were any doubt upon that point, they clearly establish that the diversion of four-fifths of its properties to the individual debts of two of the partners would make it insolvent.
According to these findings, the firm was, in February, 1867, and had been from December, 1866, largely indebted and *154 embarrassed, and the value of its property, and its consequent ability to pay its debts, depended, in part, upon the continuance and proper management of its business. The mortgages were given on the 2d and 28th of February, 1867. If they were intended to be liens upon the corpus of the property, as they have been treated by the referee, and not merely liens upon the surplus which should belong to the partners respectively after payment of the firm debts, it is evident, from the facts stated as existing at the time, as well as from the result, that their enforcement would prevent the firm creditors from collecting their demands out of the firm property, and that, under the principle of the cases cited, they were fraudulent and void as to such creditors. If so, the mortgagees, by purchasing at the sale under the mortgages, acquired no valid title as against such creditors, and the plaintiff was consequently not entitled to recover.
Assuming, however, that the mortgages were intended to pass merely the individual interests of the mortgaging partners in the common stock, and for that reason were not fraudulent as to the firm creditors, then it becomes necessary to consider their legal effect upon the rights of creditors of the firm. It is clear that the remaining partner was entitled to the control of the firm property so long as he retained his interest, and to apply it to the firm debts, and that the mortgagees acquired only a right to the surplus, if any, which would be found to belong to the mortgagors on the settlement of the accounts.
And so long as any of the partners had this dominion over the firm property, it can hardly be questioned that it Was subject to levy on execution at the suit of a firm creditor. (Lovejoy v. Bowers, 11 N. H., 404; Coover’s Appeal, 29 Penn. St. R., 9; Pierce v. Jackson, 6 Mass., 243.)
But the point upon which the judgment was sustained in the Supreme Court, at General Term, was, that after the execution of the mortgages H. E. Goodwin, the only remain *155 ing partner, made a separate transfer, to a third party, of his individual interest in the partnership properties, and, on this ground, it was held that when the execution was levied none of the defendants in the execution had any leviable interest in the property levied upon; and it was further held that the plaintiff, who had purchased the interest of S. E. Hubert, under his mortgage, was entitled, by virtue of the two mortgages and of the purchase at the sale under them, to recover the value of four-fifths of the corpus of the partnership property levied upon by the defendants, without regard to the partnership debts.
This position is not without authority in its support. It is founded upon the theory that the separate transfers of the individual interests of all the partners divested the title of the firm; that firm creditors have no lien upon the partnership effects and no direct right to compel their application to firm debts in preference to individual debts. That the right to compel this application is an equity vested in the partners themselves, and exists only as between each other. That so long as this equity exists in any of the partners, the creditors have an equity to compel its enforcement between the part- , ners, and may, by this means, obtain the application of the partnership properties to their demands, in preference to the individual debts or separate dispositions of any of the partners ; in other words, “ that the equities of the creditors can only be worked out through the equities of the partners.” From these premises, the conclusions have been drawn that if such equities are waived or released by the partners themselves the creditors lose them, and that a transfer of the individual interest of a partner in the firm property to a third person extinguishes the equity of the partner, and consequently that of the creditors, which is dependent upon it. This doctrine has been carried to the extent of holding that if the individual interests of each of the members of a firm are successively sold under executions against such members respectively for their individual debts, the purchasers acquire the corpus of the property, free from the copartnership debts, *156 and the equities of the partners and partnership creditors are extinguished. (Coover’s Appeal, 29 Penn. St. R., p. 9.)
The injustice and it may be said, the absurdities, which result from such a view, lead to an inquiry into its correctness. A firm may be perfectly solvent though the members are individually insolvent, yet in such a case the doctrine that the property of the firm is divested, and the equities of the partners and partnership creditors are extinguished, by separate transfers of the individual interests of all the partners, might result not only in an appropriation of all the properties of the firm to the payment of the individual debts, to the entire exclusion of the firm creditors, but to a most unjustifiable sacrifice and waste of such properties. For instance, suppose a firm to consist of three members, each having an equal interest, and to be possessed of assets to the amount of $300,000, and to owe debts to half of that amount, the interest of each partner, supposing their accounts between themselves to be even, is $50,000. The members of the firm are individually indebted. One of them sells his share, and receives for it $50,000, which is its actual value; the share of another of the partners is sold out under execution, and brings its full value, $50,000. Thus far one partner remains, and he has an equity to have the firm debts paid, and those wh*o have sold out are protected against those debts. The purchasers of the separate interests are entitled to the surplus only; the joint creditors still have their recourse against the partnership property and the right to levy on such of it as is subject to sale on execution; but before any levy, the remaining partner sells out his individual interest, or it is sold out on execution. According to the doctrine applied in the present case, and maintained in the case of Coover’s Appeal (supra), the firm property is, by this last sale, relieved from the partnership debts, the two shares first sold are at once changed from interests in the surplus to shares in the corpus of the property free from the debts, their value is doubled, and the fund which should have gone to pay the *157 joint debts is, without any consideration, appropriated by the transí errees of the individual interests of the partners.
Such is, in substance, the operation performed in the present case. Assuming that the mortgages are intended to convey only the separate interests of the mortgagors (which, as has been shown, is the only theory upon which they can escape being regarded as fraudulent), the mortgaged property was, at the time the mortgages were given, liable to be taken for the partnership debts. The mortgages were but a slender security, and their value dependent upon the firm debts being paid. This state of affairs continued so long as Hollister E. Goodwin retained his one-fifth interest in the firm. The firm property was legally under his dominion for the payment of firm debts, and the firm creditors, if they then had their execution, could have rightfully levied upon it, or availed themselves of Goodwin’s equity as to any property which must be reached in that form. But on the tenth of May, 1867, Hollister E. Goodwin made a transfer of his interest in the property of the firm to one Mary B. Goodwin, and on the same day the plaintiff and Samuel E. Hubert took possession under their mortgages. The referee has not found what was the consideration or purpose of this assignment from Hollister E. to Mary B. Goodwin, nor has he expressly found that it was made in good faith. But the effect claimed for it is that Hollister E. Goodwin being the only remaining partner, the transfer of his interest divested him of his dominion over the partnership property, and of his equity to require the application of the partnership property to the payment of its debts, and that as the partnership creditors could only reach the property through him, he, by this transfer or surrender of his rights, had cut off their access to it, and thrown it into the hands of the transferrees of the individual partners, unincumbered by firm debts.
Waiving any question as to the Iona fides of this transaction, the referee not having found it fraudulent, and treating the sale of Goodwin’s interest as if it had been made under an execution against him, we come back to the question *158 whether the consequences claimed do legally follow from separate sales of the individual interests of the several partners.
It would be„a superfluous labor to trace the history of the changes which have, from time to time, taken place in the views of the courts respecting the nature of the interests of individual partners in the common stock of a firm, and the respective rights of separate and joint creditors; but it is sufficient to observe that they have resulted in a general recognition of the doctrine, that as between a firm and its creditors the property is vested in the firm, and that no individual partner has an exclusive right to any part of the joint stock until the firm debts are paid and a balance of account is struck between him and his copartners, and the amount of his interest accurately ascertained.
The corpus of the effects is joint property, and neither partner separately has anything in that corpus j but the interest of each is only his share of what remains after the partnership debts are paid and accounts are taken. (West v. Skip, 1 Ves., 239; Fox v. Hanbury, Cowp., 445 ; Taylor v. Fields, 4 Ves., 396; 15 Ves., 559, note; Pierce v. Jackson, 6 Mass., 243; Doner v. Stauffer, 1 Penn. R. [Penrose & Watts, see p. 164], 198; 2 K. Com., 11th ed., p. 78, note; Collyer on Part., 3d Am. ed. [Perkins], notes to § 822, pp. 704 to 710; Story on Part., notes to §§ 261, 262, 263; Crane v. French, 1 Wend., 311; Witter v. Richards, 10 Conn., 37.)
Partnership effects cannot be taken by attachment or sold on execution to satisfy a creditor of one of the partners, except to the extent of the interest of such separate partner in the effects, subject to the payment of the firm debts and settlement of all accounts. (3 Kent Com., 76, 11th ed.)
Purchasers of the share of an individual partner can only take his interest. That interest, and not a share, of the partnership effects, is sold, and it consists merely of the share of the surplus which shall remain after the payment of the debts and settlement of the accounts of the firm. (3 K. C., 78, note b, 11th ed.)
No more property can be carried out of the firm by the *159 assignee of one partner than the partner himself could extract after all the accounts are taken. (1 Ves., 241, Am. ed., note; 15 Ves., 557.)
No person deriving under a partner can be in a better condition than the partner himself. (Fox v. Hanbury, Cowp., 445.)
A partner has no right, by an assignment of his interest, to take from the creditors or other partners the right to have their claims against the partnership satisfied out of its property. A mortgage made by one partner, of his undivided interest, cannot avail against the creditors of the partnership who attach the partnership property. (Lovejoy v. Bowers, 11 New Hamp., 404.)
These principles have been enunciated in a great number of cases where some one at least of the partners retained his equity to have the firm debts paid, and the rights of the creditors to assets or proceeds, which have come under the control of a court of equity, have been worked out through the equity of that partner. But I find no case in which the consequences of transfers of the separate interests of all the partners to outside parties has been considered, except the case of Doner v. Stauffer (1 Penn. [Penrose & Watts], 198), and Coover’s Appeal (29 Penn. St. R., 9), before referred to. In neither of these cases is the point adjudicated, for in both cases the joint creditors intervened before the sale of the interest of the last remaining partner, and their right to priority was sustained; though the opinion of the court was expressed as to what the result would have been if all the individual interests had been first sold.
There is another class of cases in which the partnership effects have been held to be liberated from liability to be applied to partnership debts in preference to the separate debts of one partner; that is where a bona fide sale has been made by a retiring partner, in a solvent firm of two members, to his copartner, the latter assuming the debts. In such a case it is settled that the property formerly of the partnership becomes the separate property of the purchasing partner, *160 and that the partnership creditors are not entitled to any, preference as against his individual creditors in case of his subsequent insolvency. (Ex parte Ruffin, 6 Ves., 119; Dimon v. Hazard, 32 N. Y., 65.) But in those cases the joint property was converted into separate property by the joint act of all the members of the firm. They had power to dispose of the corpus of the joint property, and the exercise of that power, when free from "fraud, divested the title of the firm as effectually as if they had united in a sale to a stranger. It remained subject to execution for firm debts so long as it continued in the hands of the purchasing partner. It is conceded that the creditors have no lien which would affect- the title of a purchaser from the firm. But the question now is, what is the effect upon the title of the firm, as between it and its creditors, of transfers by the partners severally of their respective interests to third persons % Where the property remains in specie, and no act has been done by the firm to divest its title, but the partners have made separate transfers of their respective individual interests to different persons, is it still to be regarded, as to firm creditors, as firm property, or has it become the absolute property of the several transferrees of the interests of the individual partners ?
It has been shown that no share in the corpus of the property passed by either of these transfers separately, but merely an interest in the surplus, and which should be ascertained on an accounting after payment of the firm debts. But it is claimed that, when all the partners have assigned, their interest in the property is divested, and their equity is destroyed, and, therefore, the property is released from the debts, and what was, at the time of the assignment, a share of a contingent surplus, has been converted into a share of the corpus of the property. Is this position sound ? When a partner sells his interest in a firm to a person other than his copartner, or it is sold on execution against him, does he thereby lose all equity to have the firm debts paid out of the assets ?
When he sells to his copartner he relies upon his assump *161 tion of the partnership debts, and unless he stipulates for an application of the assets to that purpose, he parts .with all lien upon them. But when he sells to a stranger not liable for the debts, or his interest is sold on execution, is not the right to have the debts paid out of the property a right of indemnity personal to himself, and which does not pass by the sale ? Could it be tolerated that the interest of a partner should be sold under execution against him, on which sale only the value of his interest in the surplus could be realized, and that the purchaser should be allowed to take the corpus of the property and leave him liable for the debts ? If the legal effect of the transfer wére set forth in the instrument, it would be seen that all the purchaser acquired was a right to an account, and to the partner’s share in the surplus, after payment of the debts when ascertained, and that he had no right to that part of the property which was required for the payment of debts; that the sale was subject to the debts. (3 K. Com., 76-78.) The partner whose share was sold would manifestly have an interest in the protection and appropriation of that part of the property in discharge of his own liability to the firm creditors.
I do not see how this right can be affected by the question whether the separate interests of all or only one of the partners is thus sold. Each of the purchasers would acquire an interest merely in the surplus, and each partner whose interest was sold would have the right to indemnity against the firm debts by the application to such debts of so much of the property as might be necessary for the purpose. These debts must have been taken into consideration in fixing the price of the interest sold, and consequently allowed to the purchaser, and the partnership assets are the primary fund for their payment. The case differs materially from a sale by a retiring copartner to his copartner, who is personally liable for the debts directly to the creditors; but even such a sale is valid only when there is no insolvency at the time. To sell to an insolvent partner would be a clear1 fraud. How much more clearly apparent would be the injury to creditors *162 by a sale to a person not liable for the debts, if such sale had the effect to relieve the property from them.
It can hardly be necessary, where the firm property remains in specie and is tangible and capable of being levied upon, to resort to the equities of the partners in case there has been no transfer by the firm, and the only adverse claimants are assignees of the individual interests of the several partners for their separate debts. The right of the firm creditor to levy on property thus situated can be sustained on two grounds. If the effect of any of these transfers is to divest the title of the firm, then, if effected by the acts of the partner, they are clearly fraudulent and void as to firm creditors, as is shown in the cases of Ransom v. Van Deventer (41 Barb., 807) and Wilson v. Robertson (21 N. Y., 587.) An appropriation to the individual debt of one partner of any part of the firm property, even with the assent of his copartners, is illegal and void, provided the firm is not left with sufficient to pay its debts. How absurd it would be to hold that all of the . partners, by making separate assignments of their respective shares in the firm property to their individual creditors, could effectually divest the firm of all its property and apply it to their individual debts, leaving nothing for the partnership creditors. But the simple solution of the question is to hold that the title of the firm, as between it and its creditors, to , the corpus of the property, or at least to so much of it as is necessary for the debts, is not divested by these separate transfers to strangers.
As is stated by Prof. Parsons, in his work on Partnership (chap. 10, § 1, pages 356 to 362, 2d ed.), a partnership, though neither a tenancy in common nor a corporation, has some of the attributes of both. The well established rule which excludes creditors of the several partners from the partnership property until that has paid the debts of the partnership, is derived from the acknowledgment that a partnership is a body by itself. In its relation to its creditors it is placed upon the basis of having its own creditors and possessing its own pro- .. perty, which it applies to the payment of its debts, and after *163 this work is done, there is a .resolution of the body into its elements.
Until some act is done by the firm to transfer the joint interest, no separate act of either or all of the partners, or proceedings against them individually with reference to their individual interests, should be held to affect the title of the firm so as to preclude a creditor of the firm, having a judgment and execution, from levying upon the joint property. To hold that separate transfers of their individual shares by the several' partners can convey a good title to the whole property free from the joint debts, would be to return to the doctrine, long since exploded, that partners hold by moieties as tenants in common. In the present advanced stage of the law upon this subject, no established rule is violated by holding that the title of the firm, as between it and its creditors, cannot be divested by the acts of the partners severally, not in the business of the firm, nor by the separate creditors of members of the firm (further than such temporary interruption of the possession as may be necessary to enable the officers of the law to make an effectual sale of the interest of the debtor partner). This view does not recognize any lien of partnership creditors upon the firm property. The firm have power to dispose of it without regard to the creditors, provided the disposition be not fraudulent. But the individual members or their creditors ought not to have any such power, and all transfers made by them for individual purposes should be held inoperative upon the corpus of the property, so long as there are firm debts unpaid for which the property is required. As against firm creditors, no greater effect should be given to such transfers when made by all the partners separately, than when made by a portion of them, but the property should be deemed to continue in the firm until its title has been divested by some act of the firm.'
My conclusion is that, as between the firm of J. C. Smith & Oo. and its creditors, the property levied upon by the defendants remained the property of the firm, and subject to levy on execution against it, notwithstanding the trans *164 fers by the several partners of their respective individual interests.
1 have not adverted to the changes which took place in the firm by the retirement of John Wride and M. Huntington, and the transfer by them of their interests to J. 0. Smith, intermediate the contracting of the debt to the Bank of Geneva and the levy, the effect of these changes being fully considered in the opinion of my learned associate, Allen, J.
The judgment should be reversed, and a new trial ordered, with costs to abide the event,
Allen, J. I fully concur in the legal conclusions of my brother, Batallo, and for the reasons assigned by him.
The foundation of the right of partnership creditors to follow the firm property and subject it to the payment of the partnership debts, while the right itself is recognized and favored as well at law as in equity, is not as well understood or clearly defined as is desirable in respect to legal principles affecting so largely commercial dealings and interests.
It is said that partners have a lien on the property for the payment of the firm debts, and that creditors have a quasi lien, and by means of this and through the lien of the partners they work out an effectual remedy against the property. (Ex parte Williams, 11 Ves., 4; Story on Part, §§ 360, 361.)
Hr. Parsons says of this statement: “ This theory is certainly obscure and hardly capable of being definitely stated, nor does it appear to lead in any direct or distinct way to the result for the sake of which it seems to have been constructed.” (Parsons on Part, 345.)
Gibson, G. J, in Doner v. Stauffer (1 Penn. R. [Penrose & Watts], 198), says, that “the principle which enables the partners to pledge to each other the joint effects as a fund for the payment of the joint debts has introduced a preference in favor of joint creditors,” but he differs from Chancellor Kent in the opinion that this preference is attributable to an *165 inherent equity in the creditors themselves. (3 Kent’s Com., 64.) Judge Gibson is of the opinion that such preference of joint creditors is founded on no merits of their own. The better opinion is, at this time, in accord with the views of Chancellor Kent, that the partnership debts have in equity an inherent priority of claim to be discharged from the joint property.
Although the rights and remedies of creditors against partnership property have not been very accurately defined and brought within any precise and well ascertained rule, certain general principles have been well established by judicial decisions, which, applied to the facts found by the referee, will give the creditor represented by the defendants in this action the benefit of its judgments and executions.
"Upon the theory of the respondent, that the plaintiff, under her mortgages, acquired title to the corpus of the property described, and not merely a right to the share and interest of the mortgagors in the assets of the firm, which would give her the right to an accounting and to any surplus that might remain after the payment of the partnership debts and the adjustment of the partnership accounts between the several partners, the defendants were entitled to a judgment.
As clearly shown by Judge Bapallo from the facts found by the referee, and stated as favorably for the plaintiff as the evidence would permit, the firm was insolvent, and hopelessly so, except as struggling men will hope against hope, and the transfers of the partnership property for the payment of individual debts was, therefore, a fraud upon the creditors of the firm, and void.
If the absurd theory could be established, that although the transfers or mortgages were but of the interest of the individual partners, and not of the body of the property, and therefore consistent with the rights of the partners and of the firm creditors, when the last of the individual partners made a like transfer of his individual interest to a third person, the legal effect was to change the character of all the transfers and make them effectual to convey the entire property, the *166 result would be the same, for the character of the transfer, and whether fraudulent or otherwise, must be determined by its legal effect, and if the law or -peculiar circumstances give it an effect which the parties could not legally give it by their voluntary act, it follows that the transfer is illegal and void.
A conclusive answer to this suggestion, however, is that the law cannot, of itself, work out that which is illegal or fraudulent, and if the several partners could not, by their several acts, as against the creditors of the firm, appropriate their respective shares of the partnership property to the payment of their individual debts, the law will not give that effect to a transfer of their several interests in the surplus. But passing the consideration of this question, which is well disposed of in the opinion of my brother Rapallo, a single question only will be considered, and that is as to the effect of the retirement of two of the partners, Wride and Huntington, by the transfer of their interests to another partner, Smith, after the debts were contracted with the Geneva Rational Bank, and before the recovery of the judgments upon which the property was seized by the defendants. That the withdrawal of two of the five partners, and a transfer of their interests to one of the three remaining partners, was a dissolution of the copartnership that had theretofore existed is not controverted; that is, although a firm, composed of a part of the members of the old firm, continued the business in the same name, still it was not composed of all the original members of the firm,-and therefore, strictly, the old partnership was dissolved and superseded by the new organization. But the dissolution had respect to the future and not to the past. Past transactions and existing liabilities, and the relative rights and obligations of the several partners, or the rights of creditors, in respect to past transactions and dealings, were not affected by the mere act of dissolution resulting from such withdrawal of the two and the assignment of their interest aside from any conventional arrangement between the partners, or between them and their *167 creditors, by which their respective and relative rights might be changed. The partners all continued liable in soUdo for the debts due by the firm, and all the joint property continued liable for the joint debts as it was before.
Heath, J., says, in Wood v. Braddick (1 Taunt., 104), “ when a partnership is dissolved it is not dissolved with regard to things past, but only with regard to things future. With regard to things past, the partnership continues and always must continueand Lord Mansfield, Ch. J., in same case says, “ the powers of partners with respect to rights created pending the partnership remain after the dissolutionand see Parsons on Partnership, 386, 396.
Prom the time of the withdrawal of the two partners their power to act for or represent the continuing members of the firm in new transactions ceased, and perhaps they relinquished their right to contract or deal with the joint property as they might have done in concurrence with the other partners, had the partnership been closed, and the business settled up, instead of being continued with a change in its membership. It is said also that one partner selling his interest to a copartner, who assumes his share of the partnership debts, does not, in the absence of a stipulation to that effect, have any lien, equitable or otherwise, upon the firm property, for the payment of the joint debts for which he still remains liable. (Dimon v. Hazard, 32 N. Y., 65.) This must be so when new rights have attached by reason of such change of interests, as where the transfer is to a sole partner, who becomes thereby the individual owner of the property, and rights of individual creditors have accrued as in Howe v. Lawrence (9 Cush., 553), and Robb v. Mudge (14 Gray, 534), or where the new firm which has resulted from the change of interests have exercised the jus d/isponendi which they have over the property, or there are creditors of the new firm who have the quasi lien recognized by the law. But I see no reason why, so long as the retiring partner remains liable with the others for the joint debts, and no adverse or paramount rights or liens have attached to the joint property, the same equity *168 should not he recognized as existing in him to have the joint property subjected to the payment of the joint debts that, he would have had as a continuing partner.
But whatever may be the rights and equities of Wride and Huntington, the retiring partners, the equities of the continuing partners, especially those of Hubert and Goodwin,. were not impaired or affected by the transfer of interests by Wride and Huntington to Smith, the other partner. By those transfers Smith only acquired the same interest in the property of the firm that any other transferree would have acquired, that is, a right as to the two-fifths thus purchased, to an account and to share to that extent in the surplus of the property of the firm. The fact that he was a partner does not change the character or the legal effect of the transaction. It was nn arrangement between three of five partners, and . they could not dispose of the corpus of the j oint property to the prejudice of the other partners or the creditors of the firm, or destroy the joint interest which before existed. Smith took the transfer, subject to the rights of the other partners as to the joint property, and the share or portion of the retiring or withdrawing members. The rights of an assignee or transferree of the individual share or interest of a partner in the joint property are well settled to be but a right to an accounting, or to what shall remain after the adjustment of the partnership accounts and dealings. (Mumford v. McKay, 8 W. R., 442; Nicoll v. Mumford, 4 J. C. R., 522.)
• The assignee of a partner’s interest cannot withdraw his share of the joint effects. They must remain in the possession of the continuing partners for the purpose of winding up the partnership which has been dissolved by the assignment. (Horton’s Appeal, 13 Penn. St. R., 67.)
Smith could no more have withdrawn the share of Wride and Huntington, to which he had succeeded, than he could have withdrawn his own original share in the joint effects of the firm without the consent of his copartners.
Although the original partnership has ceased to exist, the rights of the partners have not been impaired. The new *169 firm acquired and had the absolute power of disposal; and had the joint property been transferred by the joint act of all, the creditors of the old firm would have lost their quasi lien or their right to pursue this property unless they could impeach the transfer for fraud.
Had the firm, after the change of interests therein, incurred liabilities and contracted debts, a question would have arisen between the creditors of the old and new firms, and the creditors of the new would have been preferred. But no such question is in this case. The property of the original firm, composed of the five members, is still joint property with respect to the partners still retaining an interest in it, who are tenants in common, and the creditors of that firm to whom all the parties remain liable and through whom and whose equities and the equities of each of them they can, in the language of the books, work out their rights. .
Judge Stoby says: “ In case of a dissolution each partner holds the joint property clothed with a trust to apply it to the payment of the joint debts, and subject thereto to be distributed among the partners according to their respective shares therein.” (Story on Part., § 360.) Here the three partners composing the new firm, as partners and tenants in common, held this property clothed with this trust, and neither could withdraw any part of it nor do any act to impair this trust. All must unite in order to give effect and validity to any disposal of the property, except in execution of the trust or in the ordinary course of business. A transfer in payment or security of an individual debt of one is not such an act, and does not impair the trust or affect the" rights of the other tenants in common or partners, or creditors having claims to be enforced through their equities. It is only when the rights of partners as such with respect to the joint property are gone that the quasi lien of creditors is destroyed. While this right of creditors is spoken of as in the nature of a lien, or a quasi lien, and depending to a great extent upon the equities of partners inter se, it is to be enforced against the joint effects of the partners by a common-law action and *170 common-law remedies, except where the dissolution is by the death or bankruptcy of one of the partners. (Story . on Part., § 361.)
The parties who claim to have acquired severally, by transfer from the individual partners, the respective shares of such > partners, each having only the right which the law gives the assignee of the share of a single partner, if they have in any way obtained possession of the property itself, must hold it clothed with the trust which would have attached to it in the possession of the partners, their assignors, and as to the corpus of the property it remains the joint property of the firm, and liable to be seized for its debts. There has been no distribution of the property among the partners, and it has not been transferred by them as partners by any joint act, or by the act of one in the name of all, and no creditors of the later firm assert any claim to it. So long as the property continues, the firm creditors may assert their priority of right to it as against the creditors or transferrees of individual partners^ (Allen v. Center Valley Co., 21 Conn., 130; 2 Story Eq. Jur., § 1253.) It is joint quoad the partners and the firm creditors so long as any one of the partners may insist upon the partnership claims to it. (Crawshay v. Collins, 15 Vesey, 237; Peacock v. Peacock, 16 id., 57.) Here neither the partners, nor any one claiming as creditors of or under title derived from the firm, assert any claim to the property adverse to the defendants. Had a stranger to the first firm come into the second, in the place of the retiring members, a different question would have arisen. But here the continuing members of the firm are all liable for the debts of the old firm; and as successors of that firm have possession and ownership of its property, primarily chargeable with the payment of its debts, and there is no foundation in principle for the claim that each of the partners can transfer his share subject only to the claims that may exist growing out of the new relations of the partners consequent on the withdrawal of the two retiring members, and this must be established to entitle the plaintiff to hold her judgment". If Bubert and Goodwin could *171 only assert a lien for the liabilities of the three as a firm incurred after Smith acquired the additional two-fifth interests from Wride and Huntington, then the plaintiff has a good title to the undivided share and portion of the corpus of the estate for which she has been permitted to recover in the court below, otherwise not.
We are cited to several cases, of which Ex parte Ruffin (6 Vesey, 119) is the pioneer, as showing that, upon the dissolution of a partnership by the retiring of one, the creditors of the firm lose all power to enforce the payment of their debts from the joint property. But such is not the effect of the decisions, nor can such a principle be deduced from them. They are entirely consistent with the views now taken of the rights of the parties to this action. Exporte Ruffin was the case of a dissolution of partnership between two, one retiring and assigning the partnership property to the other, who continued the trade and became bankrupt. It was decided, and could not well have been decided otherwise, that by the dissolution and transfer the property became the individual property of the bankrupt, and liable to his individual debts in priority to the debts of the former partnership. The retiring partner gave to the bankrupt the entire property, with the absolute right of disposal, and the Lord Chancellor held that joint debts could not be proved against the individual estate. The like question presented in Dimon v. Hazard (32 N. Y., 65); Horton’s Appeal (supra); and Robb v. Mudge (14 Gray, 534) received the same solution. The same principle was applied in Smith v. Howard (20 How., 121); and Baker’s Appeal (21 Penn. St. R., 76).
The only difference in the several cases was circumstantial and did not call for the application of any other or different rule. The decisions all stand upon the same reasons. In the last two cases the retiring partner transferred his interest to several partners who continued the business, and it was held that the firm creditors had no such lien upon the property as would prevent the disposal of the property by the joint act of those who had become the owners or deprive the *172 creditors of the new firm of a priority. Smith v. Howard sustained an assignment‘by the two partners, to whom the other partner had transferred his interest for the benefit of creditors, in which a note indorsed by a third person as their security and given to the retiring partner in payment for his interest was preferred. In Baker!'s Appeal a like assignment by the continuing partners, preferring the debts of the new firm, was sustained. These cases are clearly distinguishable from this. If the partners who had acquired the joint right to. dispose of the property had exercised it without fraud, and as the creditors of the first or former firm had no specific liens, they could not, in the absence of any fraud, have impeached the transfer.
Judge Gibson, in Doner v. Stauffer (supra), intimates an opinion upon a theoretical case adverse to the views now taken. While restricting the purchaser of the share of a single partner to what might remain after payment of the partnership debts, he says: “A curious question might arise whether separate purchasers of the shares respectively would stand in the relation of partners so as to enable the joint creditors to follow the goods,” and intimates an opinion in the negative, but the question was not in the case. To me it seems illogical, the premises being granted, that a sale by a partner, or upon an execution against him for an individual debt, carries only a right to what may remain after the pay ment of the partnership debts, thus affirming the right of partnership creditors to a priority of payment and a quasi lien on the joint effects, to declare that such preference is destroyed and right lost by distinct, independent transfers of the individual interests of the several partners, and that while each partner, or the creditor of each individual partner, can only have dominion or acquire a title to the surplus; when each has exercised this right or the individual creditors of all have seized and sold this right to the surplus, the rights of each are at once enlarged by relation, as of the time of the first transfer of interest of any one of the partners to the *173 destruction of the acknowledged rights of the partners inter se and of the joint creditors.
In Brinkerhoff v. Marvin (5 J. C. R., 320), separate and successive judgments against individual partners for a single partnership debt were held entitled to be paid from the partnership funds, the chancellor giving the same effect to the two judgments as if they had been consolidated in a joint judgment against both the partners.
This is, so far as reported decisions have come under my observation, a case of the first impression; but by the application of well-established principles, and carrying to their legitimate and logical results the doctrines fairly deducible from authoritative adjudications, and giving proper effect to the recognized rights and equities of partnership creditors, as now understood, the plaintiff did not acquire a valid title to the partnership effects or to any part or undivided share or portion thereof, so as to give her a property in the corpus of the goods and effects as against the judgment and execution creditors of the firm.
The judgment should be reversed and a new trial granted.
All concur in both opinions.
Folder and Andrews, JJ., not sitting.
Judgment reversed.