## Case No. 14,084.

In re TOMES et al.

[19 N. B. R. 36.] [1]

District Court, S. D. New York. Dec. 18, 1878.

BANKRUPTCY—PARTNERSHIP—ASSIGNMENTS—
FIRM ASSETS.

On the first of October, 1877, T. and W., co-partners under the firm name of T. & Co., being then insolvent, made an assignment for the benefit of their creditors, but the signature and assent of the assignee were never obtained. On October 10, 1877, a paper was executed by T. and W., dissolving the firm and providing that all the assets were to be transferred to T., who agreed to assume all the debts. No notice of the dissolution was given, and the business was continued as theretofore under the old firm name. On October 22, 1877, T. made an assignment for the benefit of creditors to the same assignee. T. and W. having been adjudged bankrupt on a petition filed January 3, 1878, the assignment was set aside as in fraud of the bankrupt law [of 1867 (14 Stat. 517)]. The assets which came in the hands of the trustee in bankruptcy were wholly from property formerly of the firm. T.'s individual debts exceeded one hundred thousand dollars. On application by the trustee for instructions as to the distribution of the

[1] [Reprinted by permission.]

assets, *held*, that the transaction between T. and W. was invalid as to the firm creditors, and that the assets in the hands of the trustee must be held to be firm assets, to be distributed accordingly.

[Cited in Re May, Case No. 9.328.]

[In the matter of Francis Tomes and another, bankrupts.]

P. H. Vernon, for trustee.

Wm. S. Opdyke, for firm creditors.

F. P. Forster, for Tomes' creditors.

CHOATE, District Judge. This is a petition by the trustees of the bankrupts, asking the instructions of the court as to the distribution of the assets. The bankrupts, Tomes and Watson, copartners under the firm name of Francis Tomes & Co., were adjudicated bankrupts upon the petition of their creditors, which was filed January 3, 1878. Prior to October 10, 1877, they had done business as a firm for several years, as importers and traders in guns and other military goods. During the year 1876 they met with heavy losses, and from the end of that year certainly the firm was embarrassed. During the year 1877 its condition grew constantly worse. and on the first of October, 1877, it was clearly insolvent, and known so to be by both partners. They were carrying about forty thousand dollars of paper, which had mostly been renewed from time to time, and which they had no available means of meeting, except by fresh discounts. They had about thirty-five thousand dollars of debts on open accounts, nearly all of which was overdue, and payment of which had been demanded, a considerable part of it having been due for six months. Watson had no individual assets or individual debts of any account, but Tomes was carrying a very large amount of real estate heavily mortgaged. In this position of affairs, on or about October 1, 1877, they executed a general assignment of all their property, partnership and individual, for the benefit of their creditors, without preferences, the firm property to be distributed among their firm creditors, the individual property among their individual creditors respectively, and placed it in the hands of their attorney for him to procure the assent and signature of the assignee named therein, but his signature never was obtained. This assignment recited their insolvency. On October 10, 1877, Tomes and Watson executed a paper. whereby it was agreed that the partnership was dissolved, and that all the firm assets were transferred to Tomes, and he assumed all the debts of the firm. This agreement was kept secret between them. There was no publication of the dissolution. No notice was given to creditors. The books were not changed. The sign of the partnership was kept up. So far as appears, no new arrangements for credit or capital were made for continuing the business. On October 22, 1877, Tomes made an alleged assignment to the same assignee for the benefit of his creditors, reciting his insolvency, and also reciting the agreement of October 10, 1877. Although all the creditors have had notice of this application, and an opportunity to produce testimony, and the two classes of creditors, firm and individual, have been represented in the proceedings upon the reference, Tomes has not been called as a witness. The assignment of October 22, 1877, has been set aside as in fraud of the bankrupt law.

The proceeds of the property that have come into the hands of the trustee are wholly from the property formerly of the firm. Aside from this there are no individual assets. The firm debts are about seventy-seven thousand dollars. Tomes' individual debts, seven thousand dollars, besides ten thousand dollars on bond and mortgage, over and above the estimated value of the security. His liability on bond and mortgage is about one hundred thousand dollars. The question is whether the proceeds of the property, formerly of the firm, but transferred to Tomes by the agreement of October 10, 1877, are to be treated as his individual property for the purpose of distribution under the bankrupt law, or as firm property. If the former, all the creditors will share in it; if the latter, it must be applied to the payment of the firm debts.

There is no doubt that a partner may make a valid agreement with his copartner, dissolving the firm and transferring all the assets of the firm to his copartner, provided this assignment be made in good faith and for an adequate consideration, and the effect of such transfer will necessarily be, in case bankruptcy inures, to give individual creditors of the partner to whom the transfer is made a great advantage in the distribution of the estate. In re Long [Case No. 8,476]. And it seems that the rule is not otherwise, though the firm was, in fact, insolvent at the time. Same case, and cases cited therein, especially Howe v. Lawrence, 9 Cush. 553. But to the validity of such a transfer, as against the firm creditors, it is essential that it be in good faith, which requirement certainly includes that it be not designed, in contemplation of the distribution of the estate in bankruptcy or insolvency, to divert from them the firm assets to the individual creditors of the partner taking the transfer. Same cases.

Now, in the present case, there is no reasonable conclusion to be drawn from the facts except that the agreement of October 10, 1877, was made in immediate contemplation of the winding up of the estate and the distribution of the assets in insolvency, and with the design of diverting the firm assets from the firm creditors for the benefit of the individual creditors of Tomes. The first general assignment, which did not go into effect, shows that by the 1st of October both Tomes and Watson knew that they were insolvent, and that it was impossible to con-

tinue in business in the circumstances in which they then were placed. There is no reason to believe that they then had any other purpose or intention than that which that assignment was calculated to carry into effect. How far does the evidence show that that purpose was afterwards altered? There was no change of the circumstances, making the continuance of the business any more practicable afterwards. On the contrary, with the lapse of time, things were getting constantly worse. Then, on the 10th of October, they signed this agreement of dissolution. Is there any reason to believe, from this agreement and the acts of the parties in relation to it, and from the surrounding circumstances, that this was intended in good faith on Tomes' part with a real purpose to continue the business on his own account, which had been before carried on by the firm, and to pay the debts which he assumed? All the indications are the other way. If such had been his purpose, why should he not have advertised the dissolution and notified the creditors, opened new books, or new accounts in the old books? The change was kept secret, and in twelve days afterwards he made an assignment for the benefit of his creditors, bringing the property transferred to him by the firm into his individual estate. In fact, as soon as this change was made, he was, for the purpose of carrying on the business, in a worse condition than the firm had been; for, while he had the same assets as the firm, his debts became much larger than the debts of the firm had been. Nor can it be believed that, as between Tomes and Watson, in the existing condition of Tomes' affairs, it could have been thought possible that he could go on with the business and pay the debts. The great inadequacy of the consideration, the debts assumed being largely in excess of the assets, to the knowledge of both partners, also throws great suspicion upon the transaction, and tends to show that it was not a real transaction intended for the purpose which appears on its face. The real purpose of the transaction appeared clearly when, twelve days later, Tomes made the second assignment. The carrying on of the business for twelve days was for the purpose of giving an appearance of reality to the transaction, but it does not overcome the force of all the circumstances which tend to show that these partners never gave up from the 1st of October the purpose of having their affairs wound up in insolvency, although they did intend to change the mode of distributing their assets as between individual and firm creditors from that at first projected. The failure of Tomes to testify is also a strong circumstance against the bona fides of the transaction. The case is not to be distinguished from the cases of In re Byrne [Case No. 2,270] and In re Cook [Id. 3,150], and is in entire accordance with the case of In re Long, ut supra, where the transfer was held to have been made in good faith. See, also, Ex parte Burton, 1 Gl. & J. 207; Ex parte Usborn, Id. 358; Ex parte Ruffin, 6 Ves. 119; Wilson v. Robertson, 21 N. Y. 587. The assets in the hands of the trustee must be held to be firm assets, to be distributed accordingly.