Van Vorst, J.
— This is a judgment creditor’s action, in which it is sought to impeach as fraudulent and void as to creditors a voluntary assignment, made and executed by the defendant Brooks, bearing date March 3, 1884. The defendant Brown is the assignee named in the instrument, and he has accepted the trust. An inventory and schedule of the assigned estate, with a list of the creditors, was filed in the office of the clerk of the court of common pleas on March 22, 1884.
The case shows that the defendant Brooks was at one time a copartner in the provision business with one Edward 0. Brooks, his brother. Edward C. Brooks died in the year 1883, leaving the defendant, John I. Brooks, surviving. At the time of the death of Edward C. Brooks, the firm was largely indebted, and it possessed copartnership assets of considerable value. After the death of his partner, the defendan t Brooks, as survivor, continued the business at the same place as that occupied by the firm, using therein the assets of the late firm. He transacted the same business as that in which the firm had been engaged, and under the firm name, as though no dissolution by death had occurred. He continued buying merchan *154 dise on credit, and selling the same until his failure and assignment.
The indebtedness in favor of the plaintiffs, and upon which their judgment was recovered, was contracted after the death of Edward C. Brooks. It was for merchandise sold by the plaintiffs to the defendant Brooks. The plaintiffs had dealt with the late firm for several years, and dealt with the defendant Brooks, after the dissolution, the same as before. They knew of the death of Edward C. Brooks at the time of its occurrence.
The assignment is executed by John I. Brooks, individually and as “ surviving partner.” The signature “ John I. Brooks & Co.,” the style of the late firm, is also affixed to the instrument. The assignment conveys all the property and effects belonging to the assignor individually and as the surviving partner, or in which he individually oras surviving partner, or the late firm, had any interest. The assignment directs the assignee to pay out of the proceeds of the assigned estate certain specified debts owing by the defendant Brooks, as survivor, or owing by the “late firm,” as the same are particularly described in a schedule annexed to the assignment. Out of the residue of the assigned estate the assignee is directed to pay all the other debts existing against John 1. Brooks & Co., or the defendant Brooks, as the survivor thereof. In schedule A, annexéd to the assignment, is found a list of the preferred creditors. The debts therein enumerated include' those owing by the late firm, some being in the form of notes of the late firm, or, after the death of Edward C. Brooks, renewed by the defendant survivor, and some being obligations created after the death in liquidating claims of that firm.
By the inventory filed in the court of common pleas, the property assigned, and which is particularly described, is called the estate of John I. Brooks & Co. *155 It consists of merchandise, book debts, and real estate. The only distinct individual property of the assignor was a Produce Exchange certificate, which, according to a statement contained in the schedule, was pledged to secure a debt of the firm. The creditors are all classified under the general head of firm creditors, except one, who is named as the individual creditor of John I. Brooks. But no provision appears to have been made for the payment of the particular debt.
The learned counsel for the plaintiffs urge that the assignment is fraudulent and void, because it is a conveyance made by a surviving partner in trust for creditors. In support of their contention they refer, amongst other cases, to Nelson v. Tenney,* in this court, where a general assignment, made by a surviving partner, was adjudged to be void. The case is not reported, but the opinion of the general term is submitted with the papers. But that action was brought by the legal personal representatives of the deceased partner. The court declined to express any opinion as to whether or not the assignment was void as to the creditors of the copartnership. But be that as it may with respect to copartnership creditors, the plaintiffs, by their own election and showing, are not in the category of copartnership creditors. By their complaint they call themselves creditors of John I. Brooks individually. Their judgment is against him, and it is against him individually that their legal remedy by judgment and execution ha¡§ been exhausted. They are in pursuit of the equitable assets belonging to him, or in which he has an interest.
In that aspect of the case, I cannot conclude that plaintiffs are in an attitude to interpose the objection above mentioned. That is a point which can be urged only by partnership creditors who, with the personal *156 representatives of the deceased partner, are wronged by the "act of the surviving partner.
Another objection taken by the plaintiffs is that the assignment contains no provision for the payment of the plaintiffs’ demands, and that the residue of the asigned estate, after payment of the debts provided for, is not disposed of, and that presumptively it belongs-to the assignor himself.
In a very material part of that statement, I apprehend the plaintiffs are in error. The assignment itself is an accomplished fac.t. 'Although the plaintiffs have classed themselves as creditors of the assignor individually, which in law they doubtless are, yet the assignor has placed them, according to his view of the transaction and of their rights under the circumstances, among the firm creditors in his schedule, thus entitling them to share in the assigned estate with them. All the creditors of the late firm, as well as those whose claims arose afterwards while he was carrying on the business as survivor in the firm name, are provided for out of the copartnership assets ; these so-called firm assets embracing not only what was left “in specie” of the copartnership property, but also that which remained of the merchandise and other assets into which any part of it had been changed by the surviving partner in his subsequent dealings. They were a mingled mass, and an accounting only could determine the effect of such mingling upon the different creditors. The'plain tiffs’, claim, is not, therefore, under the assignment and schedules, overlooked. It is thus seen that the construction placed by the defendant Brooks and the plaintiffs upon the subsequent dealings of the former, and his use of the firm assets, is radically different. It was clearly the duty of the defendant Brooks to have closed up and settled the copartnership affairs, and to have applied its assets to the payment of the firm obligations, and, if *157 there was a residue, to have paid over the same to the persons entitled thereto; and he could not legally, without the consent of all parties in interest, use the firm assets or convert them into another form through new transactions. No objection, however, appears to have been made by the plaintiffs, who dealt with Mm, or by any other creditor of the late firm. There is no evidence as to whether or not the personal representatives of the deceased partner knew of the defendant’s action or of his use of the firm assets, or whether they acquiesced in or dissented from it.
U nless 1 should decide that all the assets and property, acquired by the defendant Brooks after the death of his copartner were absolutely his individual property, the plaintiffs’ position, as placed by the defendant in the assignment and schedules, is better than what it would be if he is limited in his redress to the individual property and equitable assets of the defendant Brooks. This individual property, under the evidence, is trifling in value. But so to decide would be a wrong not only to the copartnership creditors but to the legal personal representatives of the deceased partner, who, not being parties to this action, have no opportunity to be heard. These personal representatives would have a right, should they so elect, to insist that the dealings of the defendant Brooks, after the death of his partner, especially if carried on without their knowledge or assent, and the accumulation of assets through the use of the good will and assets of the firm by him, should inure to the benefit of the co-partnership estate, and be in equity regarded copartnership property. At least, they would have an election to accept or reject such subsequent transactions and to take the fruits or repudiate the losses. I cannot say, therefore, that the objection of the plaintiffs is absolutely well founded, .as their claim is provided for, although not in the way they would have chosen.
*158 In the disposition made by the assignor of the plaintiffs’ demand, and of others of the same character, I fail to discover any evidence of actual or constructive fraud. The position was peculiar, but the results reached, under the facts and circumstances, do not appear to be inequitable ; and although the plaintiffs call themselves individual creditors, and seek strict redress as such, their claim, with others similarly situated, has been provided for in a way I cannot pronounce unjust, but otherwise, approximately at least, equitable. Cases of this nature are to be dealt with in a way to inflict the least injury upon all concerned.
Another objection interposed by the plaintiffs is that the assignment makes provision for the payment of the individual debts of the defendant Brooks out of partnership assets, and that under the case of Wilson v. Robertson (21 N. Y. 587) the deed is void. But that was an action prosecuted by copartnership creditors, who claimed to have been defrauded by the deed. It is quite clear, that copartnership creditors prosecuting and seeking redress as such, and those only, can raise this objection. The plaintiffs, as I have already stated, do not sue as such. But the fact is that the only persons recognized by the assignment and the schedules as individual creditors, and the only ones unqualifiedly shown to be such, are Tabor and Wilson, and they are excluded, by the terms of the assignment, from participating in the proceeds.
It is, however, claimed by the plaintiffs that Brown & Co., who are preferred, are creditors of the assignor individually. They are, however, called by the assignor, and are treated as, copartnership creditors. The debt of these creditors originated in a loan of money made by them to the surviving partner to pay an accommodation note loaned to the firm itself. If a firm obligation was retired by the use of the money *159 loaned or advanced by Brown & Co., the surviving partner would have been entitled to be repaid out of the firm property. As the moneys of Brown & Co. in fact paid a firm obligation, I see no objection to the subrogation of them in equity to the rights of the surviving partner or to the regarding of them as entitled to be repaid out of the firm assets. That works injustice to no one.
That Tabor and Wilson, individual creditors, are not provided for raises an objection, peculiar to them, of which other creditors cannot take advantage.
It is also substantially objected that by this assignment individual property has been conveyed to pay partnership debts. Unless the real estate was held in common, it was not the individual property of the surviving partner, nor was any part of it. The assignor has testified that the partners bought some real estate on Thirty-fifth street. The deed is in evidence. The premises were conveyed to John I. Brooks and Edward C. Brooks. Unexplained, the grantees would hold as tenants in common. • But in equity, if purchased with copartnership funds, the premises would be regarded as copartnership assets. As .the partners bought it and occupied it as they did for their business, it was presumptively paid for with copartnership moneys. It is inventoried in the schedule as copartuershi p assets.
But conceding for the moment that the partners held the premises as tenants in common, and that the assignor’s individual property was appropriated to pay copartnership debts, would that make the assignment fraudulent as to individual, creditors ? I think not. This is an entirely different question from that which arises from the devotion of copartnership property to the payment of the individual debts of the assignors. A partnership debt is as much the *160 obligation of the several partners as an individual indebtedness.
It has been expressly adjudged that a provision in an assignment for the payment of copartnership debts out of the individual property of one of the partners is no fraud upon the individual creditors (Kirby v. Schoonmaker, 3 Barb. Ch. 46; Van Rossum v. Walker, 11 Barb. 237; O’Neil v. Salmon, 25 How. Pr. 246, 252).
I cannot therefore find that, for any reason assigned by the learned counsel for the plaintiffs, the assignment is fraudulent as to creditors, in law or in fact. I cannot find that the disposition made by the assignor violates any principle of equity, except in that it creates preferences. Equity prefers equality among creditors. But preferential assignments have been and continue to be tolerated in both courts of law and equity. This is a judgment creditor’s action, and not one to marshal assets. The plaintiffs seek priority in payment, through the lien created by their action upon the equitable assets of their judgment debtor. They have not established any such right, as the assignment is not found to be impeachable for the fraud upon creditors.
The plaintiff’s complaint must be dismissed, with costs.
Note on the Effect of Commingling Assets in an Assignment for Benefit of Creditors.
In Noyes v. Beaupre, 32 Minn. 496 ; S. C., 21 Northw. Rep. 728, an assignee for benefit of creditors, with the consent of all the creditors, including the defendant, purchased certain goods from the defendant and commingled them with the assigned property for the purpose of enabling him to sell the assigned property to better advantage, and appropriated the proceeds of the assigned property indiscriminately under the assignment.
Ueld, that this vested the property in the assignee, and that such sums-became part of the trust property held by him for the benefit of *161 creditors as fully as the part assigned, and that none of it could be taken on attachment either against the assignor or against the assignee, and a purchaser from the assignee got good title as against an attaching creditor. In respect to the legal result of the transaction as to the assignee, the court held that the debt entered into by the purchase was his personal debt, and it was on this ground that the goods belonging to the trust were held not liable for the assignor’s debts.
The court conceded that the assignee, having incurred this liability, with consent of all the creditors, for the better execution of the trust, lie would undoubtedly be entitled to reimbursement out of the trust property, and would have a lien on it therefor, and the right to pay it out of the trust funds; but held that this gave the seller no right to seize the trust property in an action at law against the assignee personally. •
In the case of Brannan v. Purcell, 41 Ohio St. 187; S. C., 1.Am. L. J. 177; 11 Cin. L. Bul. Supp. 365, it appeared that the archbishop, John, had a brother, Edward, a priest in the church, and chancellor and sole manager of the financial affairs of the diocese; that at the time of the archbishop’s failure—which occurred on account of liabilities which had been contracted chiefly through Edward, as his agent—the question of making an assignment for the benefit of creditors was under consideration, and it was suggested that, as the archbishop held large properties in trust, as archbishop, which would not properly be assignable for the payment of his debts, and also as it was not seemly for the interests of the church that he should make an assignment ostensibly for the benefit of creditors, he should convey all his property, excepting that which he held as archbishop, in trust to his brother Edward, and his brother Edward immediately thereupon, and as part of the same transaction, should make an assignment of all his property, including that which he thus received, to a third-person in trust for the benefit of his creditors. This was done. The legal expediency of this course was put on the ground that Edward was in fact liable personally, by reason of the nature of the transactions, for all the debts for which John was liable, and for no others. After Edward had in ensuing litigation testified to this effect, he died.
The question subsequently arose whether this confusion of joint and several liabilities under the assignment affected its validity.
Held, 1. That the assignment was valid. 2. That each of the assignors had waived all right to claim that any creditor, by electing to hold either, released the other. 3. That to the extent of the property assigned by John to Edward, Edward became absolutely liable for all of John’s debts as existing when the assignment was made. 4. That *162 John remained liable for all such debts. 5. That no creditor by proving his claim against Edward and receiving a dividend lost his right to claim against John for the unpaid balance.

 Since reported in 36 Run, 337.